Tuska, Son & Co. *v.* United States (No. 2004).[1]

1. Appraisement not the Function of Collector.

No tariff or customs law, from the first to the last, has ever in terms authorized collectors of customs, as collectors, to determine the actual or market value of imported articles or goods, and they have no implied power to appraise.

2. Construction, Paragraphs M, N, and R, Section III, Tariff Act of 1913—"Value" of Containers.

Paragraph R, Section III, tariff act of 1913, confers no authority to appraise upon collectors of customs. The "value" of the containers of imported merchandise spoken of in this paragraph is their cost. To make dutiable value the collector is authorized by virtue of paragraphs M and N, Section III, to add to the appraised value of the merchandise per se, not the market value, but the cost of the containers thereof; that is to say, the price actually paid for them, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

United States Court of Customs Appeals, March 10, 1920.

Appeal from Board of United States General Appraisers, G. A. 8283 (T. D. 38107).

[Reversed.]

*Sharretts, Coe & Hillis* for appellants.
*Bert Hanson,* Assistant Attorney General, for the United States.

[Oral argument Oct. 10, 1919, by Mr. Sharretts and Mr. Hanson.]

Before Smith, Barber, and Martin, Judges.

Smith, Judge, delivered the opinion of the court:

In this case duties on porcelains, wrapped in straw bundles and packed in wooden cases, were assessed on a dutiable value made up

----

[1] T. D. 38337 (38 Treas. Dec., 234).

of the appraised value of the goods, the market value of the cases, and the actual outlay incurred for iron, hoops, straw, and labor used in packing the goods for shipment to the United States. The actual cost to the exporter of the packing cases was 8 sen per cubic foot of space, but their market value in the principal markets of the country from which they were imported was found by the collector to be 13 sen per cubic foot. The market value of the iron hoops, straw, and labor used in packing the goods for shipment was not determined by the collector, but their actual cost to the importer was admitted to be 10 sen per cubic foot of space. The packing cases, iron hoops, straw, and labor constituted no part of the market value of the goods per se, and their value was not included by the appraiser in his appraisement of the porcelains.

The importer claims that the dutiable value of the merchandise was the appraised value of the porcelains as found by the appraiser plus the actual outlay made by the importer for the packing cases, iron hoops, and straw utilized in preparing the goods for shipment to the United States.

The Government on its part contends in effect that to make dutiable value, the market value of the porcelains per se, as determined by the appraiser and the market value of the packing cases as found by the collector, must be added to the expense actually incurred for the hoops, straw, and labor necessary to pack the goods for shipment.

We can not agree with the Government's contention that duty is assessable on the market value of packing cases used for the purpose of shipping goods to the United States and not used as containers thereof when offered for sale in the principal markets of the country from which the merchandise is imported.

A careful examination fails to disclose that any tariff or customs law from the first to the last has ever in terms authorized collectors of customs, as collectors, to determine the actual or market value of imported articles or goods. That fact, coupled with the further fact that collectors of customs are not necessarily appointed from the commercial world, and more often than not are men with but little if any trade or mercantile experience, leads inevitably to the conclusion that the right to appraise is not an attribute of the collector's office.

The very first tariff act prescribed that certain goods, subject to an ad valorem rate, should be assessed for duty on their value at the time and place of importation, and the customs administrative act provided that the collector should determine that value, not, however, be it noted, by appraising the goods, but by adding 10 per cent to the actual cost thereof unless the importation came from the Cape

of Good Hope or beyond, in which event 20 per cent was added. (Sec. 1, act of July 4, 1789; secs. 13 and 17, act of July 31, 1789.)

What was the market value of the goods or their actual cost, or even the dutiable charges or commissions thereon, the collector of customs could not know, and for prompt and efficient dispatch under those acts of the customs business, he was of necessity remanded to the entry and original invoices for the data required to determine the official or dutiable value of merchandise. Indeed, the invoices were so much a prerequisite to the ascertainment of duties that the importer was required to produce to the collector on entry of the goods the original invoices, together with the bills of lading, and if such invoices were not produced or if the collector suspected that the invoices submitted were fraudulent, the importation was held in customs custody until appraised, *not by the collector, but by two merchants, one chosen by the collector and the other by the importer.* (Secs. 13, 16, and 22, act of July 31, 1789.)

It was subsequently provided by the act of April 20, 1818, that in certain designated principal ports of the country appraisements ordered by the collector should be made by three appraisers qualified for the duty, two to be appointed by the President, with the approval of the Senate, and one by the importer. In ports other than those designated the act required that goods should be appraised for customs purposes "by three respectable resident merchants," two chosen by the collector and one by the party in interest. (Secs. 9 and 10, act of Apr. 20, 1818.)

The estimation of duties on the basis of invoice and entered values, with no appraisement save that which the collector might order under special circumstances, apparently did not afford to the revenues all the protection that was expected, and Congress in 1832 made it the duty of the collector, whether or not correct invoices were produced, to cause to be appraised the actual value of all ad valorem goods. (Sec. 7, act of July 14, 1832). Section 16 of the act of August 30, 1842, required that that appraisement should be made not of the actual value, but of the actual *market value or wholesale price of the goods* at the time when purchased in the principal markets of the country from which the same were imported. Section 2609 of the Revised Statutes prescribed that in ports not provided with an appraiser appraisements of merchandise should be made by two respectable merchants appointed by the collector of the district.

The act of June 10, 1890, put an end to appraisements by merchant appraisers and definitely established a system of appraising merchandise for customs purposes which made the jurisdiction to appraise the exclusive function of a customs official known as the local appraiser, whose action was subject to review, not by the collector, but by a general appraiser and a board of three general appraisers exercising

appellate powers wholly independent of the customhouse and its officials. It is true that now and then collectors of customs sought to determine the actual market value or wholesale price of imported goods and to overrule the decision of the local appraisers, but it is equally true that the courts have uniformly held that the collector's action in that behalf was wholly invalid and void. In the matter of the protest of H. B. Claflin (T. D. 26514); Wills et al. v. Russell (30 Fed. Cases, 70).

Congress having expressly given to officials other than the collector the right to appraise goods, it can hardly be said, in the absence of express authorization, that the collector wholly without authority to appraise the goods themselves, nevertheless had the implied power to appraise the containers required to pack the goods for shipment, especially as the reasons which made it inadvisable for the collector to appraise the goods themselves, were applicable with equal force to his appraisement of the containers thereof. Certainly, if the authority to appraise was expressly withheld in the one case, it would be going far indeed to say that it was *impliedly* conferred in the other. In short, Congress having expressly provided that goods should be appraised by experienced men with no other duty to perform, could scarcely have intended that the containers of goods should be appraised by an official burdened with a multitude of administrative duties and without the time and probably without the qualifications for the work.

The Government, however, insists in effect that the right to appraise the value of the containers is expressly conferred on the collector by Section III, paragraph R, of the act of 1913, and that the dutiable value of the importation is the market value of the merchandise per se as determined by the appraiser, plus the market *value* of the containers and other costs and charges incurred in preparing the goods for shipment as determined by the collector. In order to sustain that contention the word "value," as used in the statute, must be interpreted to mean *market* value and that interpretation we do not think is justified in view of the history of the legislation, the construction placed upon prior statutes of a like character, and the language of the paragraph itself.

Section 24 of the act of July 30, 1864, provided that dutiable value should be ascertained first by adding to the value of such goods at the place of growth, production, or manufacture the cost of transportation, shipment, and transshipment, with all the expenses included, from the place of growth, production, or manufacture, whether by land or water, to the vessel in which shipment is made to the United States; second, *the value* of the sack, box, or covering of any kind containing such goods; third, commissions at the usual rate, in no case less than 2½ per cent, brokerage, and all export

duties; fourth, all costs and charges paid or incurred for placing said goods on shipboard, and all other proper charges specified by law.

Section 9 of the act of July 28, 1866, section 2907 of the Revised Statutes, and section 19 of the act of June 10, 1890, substantially reenacted the provisions of section 24 of the act of 1864, which required that the value of containers and the cost and charges should be added to the per se value of the goods. Under these acts, and particularly section 19 of the act of June 10, 1890, it was contended that all questions respecting value and dutiable charges were within the exclusive jurisdiction of the appraisers, but no one ever seriously contended that the word "value" as used in those enactments conferred any authority on the collector to appraise or determine market value. The board and courts have uniformly held that costs and charges are not appraised, but ascertained and added to the appraisement of the merchandise. Protest of The John Shillito Co. (T. D. 23851); protest of H. B. Claflin (T. D. 26514); Grinnell *v.* Lawrence (11 Fed. Cases, 862–864); Oberteuffer & Another *v.* Robertson (116 U. S., 499, 509, 510); Badger *v.* Cusimano (130 U. S., 39, 41, 42).

The Supreme Court, further confirming that view, held that the collector may add dutiable charges to the per se value of the goods, but that his action in that respect was not in the nature of an appraisement and was subject to protest. United States *v.* Passavant (169 U. S., 16–20). That the appraisal of importations is limited to the goods themselves was settled as early as November, 1855, when the Circuit Court for the Southern District of New York, Nelson, circuit justice, and Betts, district judge, sitting, decided that section 8 of the act of 1846, in so far as it provided that the *dutiable value* of imports should be *appraised, estimated,* and *ascertained,* meant no more than section 17 of the act of 1842, which limited appraisements to the goods themselves and required that costs and charges should be added to the appraised value of the merchandise.

Section 28 of the act of 1909 reenacted section 19 of the act of June 10, 1890, as section 18, with the following amendment, "the words 'value,' or 'actual market value,' or 'wholesale price,' whenever used in this act, or in any law relating to the appraisement of imported merchandise, shall be construed to be the actual market value or wholesale price of such or similar merchandise comparable in value therewith, as defined in this act."

Under that act it was urged by the importers in United States *v.* Spingarn Bros. that some 500 inside boxes had been appraised by the appraiser at the sum of 309 francs, and that the collector had no right to add to that amount an additional sum of 206 francs to

make up the full amount paid for the boxes as shown by a "debit note" which came to his attention.

We definitely held in that case that it was no part of the appraiser's duty to appraise the charge for the boxes, and that the collector was strictly within his prerogative when he added to the appraised value of the goods the correct amount actually paid for the inside containers. That was in effect a decision that the value of the containers was not their market value, but the price actually paid therefor. We said in that case that the statutory definition of the word "value" gave to the appraisers no power to appraise containers, but simply established a rule of appraisement by virtue of which appraisers were not confined to a determination of the market value or wholesale price of the particular importation, but were authorized to fix as the value thereof, the value of similar merchandise comparable in value therewith. United States v. Spingarn Bros. (5 Ct. Cust., Appls., 2, 3, 11; T. D. 34002).

If the amendment of section 19 of the act of 1890, accomplished by section 28 of the act of 1909, did not authorize appraisement of containers by the appraisers, it is patent that the amendment conferred no such jurisdiction on the collector. To hold otherwise would result in two appraisements, one of the goods themselves by the appraisers and the other of the containers by the collector, an anomaly which we can not believe was contemplated by Congress.

We hold, first, that the office of collector of customs does not imply the power to appraise; second, that no authority to appraise is conferred upon the collector by paragraph R, of section 3; third, that the "value" of the containers of imported merchandise is their cost; fourth, that to make dutiable value the collector is authorized by virtue of section 3, paragraphs M and N, to add to the appraised value of the merchandise per se, not the market value, but the cost of the containers thereof, that is to say, the price actually paid for them, and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States.

The decision of the Board of General Appraisers is *reversed.*