C. H. POWELL Co., INC. (DOUREDOURE BROS.) *v.* UNITED STATES

No. 4919.—Invoice dated Piraeus, Greece, February 9, 1938.
        Entered at New York March 4, 1938.
        Entry No. 824356.

Third Division, Appellate Term

(Decided May 22, 1940)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellant.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellee.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., concurring

KEEFE, Judge: This is an appeal brought by the importer for the review in reappraisement of the findings of value by the trial court upon certain iron drums filled with olive oil and imported from Greece.

The invoice discloses that the olive oil was contained in 100 new drums costing 300 Greek drachmas each, and that the foreign value of second-hand drums is 180 drachmas each. The drums were entered at 160 drachmas and appraised at the cost price of 300 drachmas.

At the trial it was established that in the country of exportation the foreign value of uncleaned second-hand drums was 160 drachmas each and, if cleaned, they are 20 drachmas higher. Counsel for the plaintiff admitted that the drums in question cost 300 drachmas each but contended that when said drums were filled with olive oil they took the status of uncleaned second-hand drums and therefore the foreign value thereof, in their condition as exported, is 160 drachmas each rather than 300 drachmas.

The trial court in its opinion (Reap. Dec. 4685) amply set out the evidence and we feel that it will serve no good purpose to repeat it here. From the evidence presented, the trial court held that the filling of the new drums with olive oil made no difference in the character of the drums and that the price at which identical drums were freely offered for sale and sold in the principal markets of Greece in the usual wholesale quantities and in the ordinary course of trade was 300 drachmas each.

Upon appeal counsel for the importer filed eleven assignments of error. The first eight were directed to errors in the court's decision; the tenth against the denial of the court to transfer the case to Boston; and the ninth and eleventh against rulings upon the evidence. We have examined the last three assignments and find no error in the court's rulings.

The importer contends that the drums, as imported into the United States, were once-used or second-hand drums, and that as imported they were in the same condition or class as once-used or second-hand drums in Greece or in the United States; and further that the drums were not new at the time of importation.

The Government contends that where the value of "such" merchandise appears on the invoices, section 402 of the Tariff Act of 1930 requires imported merchandise to be appraised accordingly, to wit, at the cash values without resort to values of "similar" goods. Further, it is contended that section 402 (c) defines foreign value as the freely offered wholesale price of such or similar merchandise in the country of exportation in condition, packed ready for shipment to the United States and that the drums in question were filled with olive oil at the time they were ready for shipment to the United States and therefore are dutiable in that condition.

As we see it, the question in this case is whether or not iron drums, used as containers of imported merchandise, for which an ad valorem duty is specially provided for in the tariff act, are to be assessed with a duty measured by the foreign value thereof upon the date of shipment or by the cost thereof in accordance with the provisions of section 402 (c).

The paragraph under which the merchandise was advisorily classified for duty, and section 402 (c), provide as follows:

PAR. 328. * * * cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; * * * 25 per centum ad valorem; * * *

SEC. 402. VALUE.

(c) FOREIGN VALUE—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the *cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.* [Italics by court.]

It cannot be denied that the merchandise the subject of importation herein is olive oil and the drums are imported because they are the necessary containers thereof. However, inasmuch as iron drums are specially made the subject of duty under a specific provision of the tariff act, even though filled with merchandise, they are to be treated as imported merchandise insofar as the duty applicable thereto is concerned. See *General Aniline Works, Inc.* v. *United States*, Abstract 24382 and *Gash Refining Corp.* v. *United States*, T. D. 47890.

The courts have construed the provision in paragraph 328, *supra*, as applying only to drums that have a commercial value after being emptied of their contents. Drums that are destroyed in removing the contents or are unfit to be entered into competition with other drums in the commerce of the United States are treated as the usual and ordinary containers of the merchandise transported therein and are subject to the duty, if any, applicable to their contents, upon

the basis of the cost of the containers in the country of exportation. See *Huisking & Co.* v. *United States*, T. D. 45017; *Pacific Creosoting Co.* v. *United States*, 1 Ct. Cust. Appls. 312, T. D. 31407; *Marx & Rawolle* v. *United States*, 3 Ct. Cust. Appls. 94, T. D. 32359.

The administrative provisions of the law also provide for the value that should be placed upon all containers of merchandise, including the same in the dutiable value of the goods contained therein upon the basis of their cost. This provision, section 402 (c) *supra*, therefore, should be considered together with paragraph 328, in determining the amount of duty applicable to iron drums when used as containers. In so doing we find that there is a distinction made between the duty applicable to iron drums that are imported empty and those imported as containers, in manner following: Drums imported empty as merchandise are dutiable upon the basis of the foreign or export value thereof at the time of shipment, while drums imported as containers are dutiable upon the basis of their cost. Being containers of merchandise of the ordinary and usual character, the duty assessed upon the same is measured by their actual cost irrespective of any advance in the foreign or export value thereof before the time of shipment from the foreign country. In the case of *Tuska, Son & Co.* v. *United States*, 10 Ct. Cust. Appls. 65, T. D. 38337, it was held that the value of the containers of imported merchandise is their cost, the price actually paid for them. In the case of *United States* v. *Richard & Co.*, 14 Ct. Cust. Appls. 120, T. D. 41646, certain bobbins were imported from France. The cost of the containers amounted to 7,500 francs. Before the goods were exported the cost of the containers advanced in value to 12,500 francs, and the appraiser added the advanced costs to the value of the merchandise. The court held that section 402 (c) directs that the "cost of all containers and coverings" shall be added to the market value of the goods, and does not mean the value of such coverings or containers. It means what was paid, or agreed to be paid, for them. "If Congress had intended that the *value* of the containers, coverings, etc., and not the *cost* thereof, should be added to make export value, it were easy to have used apt language to express that intent."

In enacting paragraph 328 and providing a duty to be placed upon iron drums when used as containers of merchandise, Congress was aware of the fact that containers are included in the duty of the merchandise contained therein upon the basis of their cost. Yet, in section 402 (c) in the Tariff Act of 1930, Congress made no exception for iron drums, but specifically stated that the cost of *"all containers and coverings of whatever nature"* was included in the foreign value.

In view of the express provisions of the statute, it is our opinion that the containers in question were properly returned with duty under the provisions of paragraph 328 upon the basis of value declared

upon the invoice as being the cost thereof rather than upon the basis of any other value. It is therefore immaterial whether the drums were new when exported or were in the condition of second-hand drums. Nor is it material that the drums when arriving in the United States were in the condition of second-hand drums.

Consequently the decision of the trial court is affirmed and judgment will be entered sustaining the appraised value of 300 drachmas each as the value of the merchandise.

CONCURRING OPINION

EVANS, Judge: I concur in the result of my colleague's opinion but for different reasons than those therein stated. The substantive provisions of the Tariff Act of 1930 applicable to this class of commodity, to wit, paragraph 328 of the Tariff Act of 1930, provide an ad valorem rate of duty for "cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty." (Underscoring supplied.) It is therefore manifest, it seems to me, that Congress intended to treat containers of the type described in said paragraph in a different manner from other containers. I agree that these articles, therefore, are to be treated as imported merchandise and as such they are dutiable at an ad valorem rate as articles of merchandise. This, it seems to me, would preclude an appraisal of them as containers of the merchandise because the value defined in section 402 (c) applicable to this olive oil includes the cost of containers, that is the statutory value of the olive oil is made up of the price as there defined, plus the cost of containers. The cylindrical or tubular tanks or vessels involved being articles of merchandise, taxable, and having themselves no containers, their value is likewise defined by section 402 (c), the only difference being that the cost of the containers for such cylindrical tanks or vessels can make up no part of the foreign value thereof.

The fact that cost of containers constitutes part of the value of olive oil imported cannot permit the Government officials to evade the necessity of appraising such cylindrical or tubular tanks or vessels for holding liquids in the manner provided by the statute for imported merchandise.

According to the testimony the importer bought drums of olive oil. Having bought them filled, can it be said they would have the same foreign-market value as new, unfilled drums? Exhibit 1, an affidavit of one of the partners of the exporting firm in Greece, states the foreign-market value of second-hand, once-used olive oil drums in the usual wholesale quantities to be 160 drachmas each. Nowhere has he given the foreign value of newly purchased, just filled drums, and it would seem reasonable that there would be a difference between drums that

had seen service in shipment and drums that had merely been filled and never shipped.

I therefore can find no basis for determining the value of these new, once filled, but otherwise unused drums, and think the presumption of correctness attaching to the appraiser's finding of value has not been overcome.