HUGO REISINGER (INC.) ET AL. *v.* UNITED STATES (No. 3469)[1]

[1] T. D. 45683.

United States Court of Customs and Patent Appeals, May 2, 1932

*James W. Bevans* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Lyman Ward*, special attorney, of counsel), for the United States.

[Oral argument April 13, 1932, by Mr. Bevans and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court.

By act of the German Reichstag (German Federal Parliament) of July 9, 1923, a tax was levied upon illuminants and illuminating materials destined for consumption in Germany (certain specified territories being excepted) amounting to 20 per centum of the selling price.

The act declares—

Illuminants within the meaning of this law are:
1. Electrical lamps and burners for Nernst lamps;
2. Mercury vapor and similar lamps;
3. Carbons for electrical arc lamps;
4. Incandescent bodies for increasing the illuminating power of flames.

Appellants made a number of importations from Germany of articles falling within the definitions above quoted from the German law, said importations being made while the Tariff Act of 1922 was in force, and the local appraiser at the port of entry included the 20 per centum tax item as a part of the foreign value of the merchandise so imported.

Appellants, contending that such tax was no part of the foreign market value, appealed to reappraisement. The controversy was heard and determined by Judge Young, sitting in reappraisement, and the action of the local appraiser was sustained. Thereupon

appeal was taken to the Customs Court, and, being heard by the Second Division of that tribunal, the judgment of the single judge was affirmed.

From the latter judgment appellants have appealed to this court.

No issue of fact is presented, and the sole question is whether, as a matter of law, the aforesaid German tax is a part of the foreign value of the merchandise, as defined in section 402 (b) of the Tariff Act of 1922, which reads as follows:

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In rendering his decision Judge Young, among other things, said—

* * * the tax in question is simply a sales tax collected at the time of the sale of the merchandise by the German seller.

This view was approved by the participating judges of the Second Division of the Customs Court upon appeal.

Various authorities were cited in Judge Young's opinion and held by the Second Division to be controlling, particularly that of *United States* v. *Passavant*, 169 U. S. 16.

It is the contention of appellants that the German—

tax is obviously designed to attach to the use of the illuminants after title has been acquired by the purchaser,

and, therefore, that it is not such a tax as under the decisions of the courts becomes a part of foreign value.

We are unable to agree that under the record in this case the contention as to the tax being designed to attach to the use of the illuminants after title has been acquired by the purchaser is correct. It is not supported by any testimony, nor does any proper interpretation of the German statute sustain such a theory.

A verified translation of the statute is made a part of the record in the case. The first clause of paragraph 4 therein expressly provides—

In connection with the illuminants produced within the territory of the application of the provisions of this law, there shall be considered as tax debtor, whosoever introduces illuminants into the open market; the tax indebtedness is incurred upon the entering of the illuminants into the open market.

The succeeding clause declares that the "pertinent provisions of the [German] customs law" define "the person of the tax debtor and the origination of the tax indebtedness" in the case, we assume, of illuminants not produced in the territory to which the law applies, but which are imported into same.

The first clause of paragraph 7 of said statute provides—

As taxable value there shall apply the price invoiced by the tax debtor to his customer. If the tax debtor supplies the illuminant without compensation (gratuitous), then there shall be applied as assessable value, pursuant to further detailed regulations, to be issued by the Federal Minister for Finances, the price for similar illuminants.

The succeeding clause provides—

If the tax on illuminants is included in the price, then there shall be considered as assessable value the price less the tax on illuminants.

Other provisions of the act define the methods of making the tax returns and provide certain administrative details.

In support of appellants' argument it is pointed out that—

The law requires the tax to be invoiced separately—that is, to be shown separately on the invoice to the purchaser—and by reference to pages 6 and 7 of the record it will be seen exactly how carbons subject to such tax are invoiced. The manufacturer's gross price is given; from this price the discount of 46¾ per cent is deducted, and to this net amount is added the packing cost, and then there is invoiced 20 per cent as the lighting tax.

The manufacturer, after he collects the tax, which, as shown, is invoiced as a separate item, makes a report to the German Government every fortnight on an official form and remits the amount collected. In doing this it is obvious that he is merely an agent of the German Government for the collection of a tax predicated upon the use of illuminants in the German territory.

. Conceding, though not holding, all this to be true, we yet fail to see wherein this affects the soundness of Judge Young's observation quoted *supra*, as to the nature of the tax.

The tax is paid by some one upon the merchandise sold in the German market and becomes due and payable upon the sale being made. So far as the German Government is concerned, its collection is enforced at the source of that particular sale which "introduces the merchandise into the open market." The seller is liable, and the tax is actually collected by the Government from such seller, who in turn, in the ordinary course of trade, collects it from the purchaser. It is included—must be included—upon the invoice made by the seller to the purchaser. Even if the tax debtor gives the merchandise itself away, it is still subject to have applied to it "as assessable value * * * the price for similar illuminants," under authorized regulations, and said tax debtor is liable for the tax so assessed.

Furthermore, paragraph 20 of said German act provided—

In so far as on the day of the entering into force of this law there are pending contracts for the delivery of illuminants, the buyer or customer is under the obligation to pay to the supplier a price which is increased by the amount of the tax increase or of the subsequent tax, respectively, unless otherwise agreed upon.

This provision undertaking to fix an additional liability as part of a pending contract and define an additional obligation on the part

of a purchaser, we must presume to be valid under German law, nothing to the contrary appearing of record, whatever might be the holding of courts in the United States were a similar provision made a part of our legislation, and obviously it emphasizes the fact that the German tax under examination was clearly intended to become, and did become, a part of the value or price at which the merchandise was—

freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade.

It evidently is a sales tax passed on to and finally paid by the ultimate consumer of the article upon which levied.

The fact that the tax was required to be separately listed upon the invoice from the tax debtor to the purchaser does not change the law as to its being a tax.

A somewhat analogous principle was applied in the case of *General Dyestuff Corp.* v. *United States,* 19 C. C. P. A. (Customs) 309, T. D. 45480, recently decided by this court, wherein it was held that a certain so-called royalty fee which an importer of dyestuffs added to the price at which the merchandise was sold, or offered for sale, to customers in the United States, such fee being separately billed, and paid, upon collection, to the owner of a patented process for using the merchandise, constituted, under the facts of that case, an element of United States value under section 402 (d), Tariff Act of 1922.

Appellants have also argued that paragraph 9 of the German act "provides for refunding the tax on illuminants which are not used."

Even were this correct to the full extent alleged, we do not think, considering the German law as a whole, that it would be conclusive that the tax does not enter into the foreign value as same is defined in the United States Tariff Act of 1922.

However, we can not agree that said paragraph 9 is so broad as the language quoted, *supra,* from appellants' brief would imply. The paragraph reads—

PAR. 9. The tax on illuminants which are placed at disposal, by a producer or by the owner of a bonded warehouse (par. 12), on account of the fact that same can not be used (as to which proof must be submitted), or which otherwise are taken back by him, must be refunded in accordance with the special regulations to be issued by the Federal Minister of Finances. The Federal Minister of Finances can also fix the flat rates in this connection.

Whether the paragraph has received construction, judicial or otherwise, by German authority does not appear from the record before us.

It is noted that the language is—

illuminants which are *placed at disposal,* by a producer or by the owner of a bonded warehouse (par. 12), [etc.]. (Italics ours.)

Paragraph 12 reads—

Illuminants which are manufactured within the territory for which the provisions of this law apply, may be exported without tax payment, in bonded traffic or trade, out of the territory of application of this law, or can be placed in a bonded warehouse. More detailed provisions in this connection are issued by the Federal Minister for Finances.

It is assumed by us that the phrase, "placed at disposal," in paragraph 9, *supra*, has a meaning different from the phrase, "introduces * * * into the open market," used in defining the "tax debtor" in paragraph 4, *supra*. However this may be, and without attempting a detailed construction of said paragraph 9, it seems manifest that, at most, it merely makes provisions for a refund of the tax in certain cases "in accordance with special regulations." What those regulations are the record does not disclose.

Obviously, this provision can not affect the general practice under the law, as disclosed by such facts as the record contains, and is not of itself sufficient to justify a holding that the tax does not enter into the price at which the merchandise is offered for sale in the ordinary course of trade in Germany.

Like the court below, we are unable to distinguish this case in principle from the doctrine announced by the Supreme Court of the United States in the *Passavant* case, *supra*.

The judgment of the United States Customs Court is *affirmed*.