UNITED STATES *v.* F. S. ALLENBY & CO. ET AL. (No. 3436)[1]

[1] T. D. 45703.

United States Court of Customs and Patent Appeals, May 16, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

*Frank P. Wilson, Sharretts & Hillis, B. A. Levett* (*Bert Hanson, Edward P. Sharretts, Siegel & Mandell, Walden & Webster*, and *Brooks & Brooks* of counsel) for appellees.

[Oral argument December 11, 1931, by Mr. Stein, Mr. Sharretts, and Mr. Hanson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court in reappraisements 11945, etc.

There are involved in this appeal 4,794 reappraisement cases. It appears from a stipulation entered into by the parties that a large majority of those cases involve only so-called duress entries, filed in accordance with the provisions of section 489 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 489. * * * Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this Act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement.

It appears from item 4 of the stipulation that the following cases, enumerated in schedule 1 thereof, were cited in a large number of the duress-entry cases as similar cases then pending on appeal for reappraisement: Reappraisements 90477–A, 59532–A, 62354–A, 66143–A, 22517–A, 29311–A, 90914–A, 54322–A, 90366–A, 90539–A, 90812–A, 86541–A, and 90467–A.

We quote from the stipulation:

5. Schedule 2, appended hereto, includes reappraisement cases which are duress entries and in which the duress certificates cite the entries decided in *United States* v. *Iwai*, 16 Ct. Cust. Appls. 542, on February 16, 1929, and in which all of the merchandise was *entered prior* but *appraised subsequent* to the decision in that case.

6. Schedule 3, appended hereto, includes cases in which the duress certificates do not comply with section 489 of the Tariff Act of 1922.

7. All of the reappraisement cases involved in this appeal, excepting those enumerated in schedules 1, 2 and 3, above, are duress entries in which the duress certificates cite as test cases entries in *United States* v. *Iwai, supra,* and other test case entries involving the Japanese tax issue pending in this court or the United States Customs Court. All of the merchandise involved in the reappraisement cases in this class was *entered and appraised prior* to the decision in *United States* v. *Iwai, supra,* or the other pending cases involving the Japanese tax issue.

Summarizing then, it may be said that, of the 4,794 cases involved in this appeal, all but reappraisements 90477–A, 59532–A, 62354–A, 66143–A, 22517–A, 29311–A, 90914–A, 54322–A, 90366–A, 90539–A, 90812–A, 86541–A, and 90467–A, and those referred to in item 6 and enumerated in schedule 3 of the stipulation involve duress entries; that each of the duress entries referred to in item 5 and enumerated in schedule 2 of the stipulation cited reappraisements 11274–A, 11448–A, 11535–A, and 11729–A, as similar cases then pending on appeal; that the issues in those reappraisement cases were finally determined by this court in favor of the importers in the case of *United States* v. *Iwai & Co.,* 16 Ct. Cust. Appls. 542, T. D. 43265; that the merchandise covered by each of those duress entries was appraised by the local appraiser *subsequent* to the final decision in the *Iwai* case; that all of the other reappraisement cases in this appeal involve only duress entries in which the duress certificates cited as similar cases then pending on appeal those involved in *United States* v. *Iwai & Co. supra,* and other similar cases now pending in this court or the United States Customs Court; and that the merchandise covered by each of those duress entries was appraised by the local appraiser *prior* to the final decisions in the pending or test cases.

In a series of cases—*Beaver Products Co. (Inc.)* v. *United States,* 17 C. C. P. A. (Customs) 434, T. D. 43878; *United States* v. *Fuchs & Lang Manufacturing Co.,* 18 C. C. P. A. (Customs) 460, T. D. 44760; *Innis Speiden & Co.* v. *United States,* 19 C. C. P. A. (Customs) 1, T. D. 44789; *United States* v. *Friedlaender Co.,* 19 C. C. P. A. (Customs) 334, T. D. 45498—this court construed the quoted provisions of section 489 and held, *inter alia,* that an appraisement of merchandise covered by a duress entry must be held in abeyance until the issues involved in the test case—cited in the duress entry—then pending on appeal for reappraisement have been finally adjudicated, and that an appraisement by a local appraiser of merchandise covered by a duress entry prior to the final decision in the test or pending case is contrary to law and void.

In view of the fact that the merchandise covered by the duress entries referred to in item 7 of the stipulation was appraised by the local appraiser prior to the final decisions in the several test cases—cited in those duress entries—then pending on appeal for reappraisement, we must hold, on the authority of the decisions in the cases to which we have referred, that the appraisements by the local appraiser of the merchandise covered by those duress entries were prematurely made and void.

The imported merchandise consists of silk piece goods exported from Japan. It was entered at its export values. It was appraised at higher values, which, it is claimed by the Government, were its foreign values.

Importers appealed to reappraisement.

On the trial before the associate judge, sitting in reappraisement, considerable testimony was introduced by the parties. The associate judge found from the evidence that the imported merchandise had no foreign values; that it was dutiable at its export values, which were its entered values, and judgment was entered accordingly.

Thereupon, the Government filed an application for a review by the Appellate Division of the Customs Court of the judgment of the associate judge in accordance with the provisions of section 501 of the Tariff Act of 1922.

The Appellate Division of the Customs Court held that the involved merchandise had no foreign values on the dates of exportation; that its dutiable values were the export or entered values, and accordingly, affirmed the judgment of the trial court.

The precise issues presented to the courts below were: Did the merchandise have foreign values on the dates of exportation? If so, were those values higher than the export values by the amount of the Japanese textile consumption tax?

The dutiable value of the merchandise was its foreign or export value, whichever was higher. Section 402 (a), Tariff Act of 1922.

Foreign value is defined by section 402 (b) as follows:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Export value is similarly defined, except that it is limited to merchandise sold or freely offered for sale *for exportation to the United States.*

Counsel for the Government contends that the merchandise had foreign values on the dates of exportation; that those values were in

excess of the export values by the amount of a textile consumption tax levied by the Government of Japan on merchandise of the character of that involved when sold for consumption in that country; that the consumption tax was 10 per centum of certain standard values (not market values) fixed by the Government of Japan; that, in view of the decisions in the cases of *United States* v. *Passavant*, 169 U. S. 16; *Roger & Gallet* v. *United States*, 12 Ct. Cust. Appls. 201, T. D. 40181; *International Sales Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 506, T. D. 40699; *T. D. Downing & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 293, T. D. 42873, and the Japanese textile consumption tax law, which was introduced in evidence in this case, all of the evidence, introduced by appellees in the trial court for the purpose of establishing that neither the involved nor similar merchandise was sold or freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for consumption there, and that all such merchandise was manufactured, sold, and freely offered for sale in Japan solely for export to the United States and other foreign countries, at prices equal to, and not greater than, the entered values, which were the export values, and which did not include the textile consumption tax, was incompetent, irrelevant, and immaterial; that, as a matter of law, the merchandise had foreign values, which included the tax, regardless of whether it and similar merchandise was manufactured, sold, and freely offered for sale solely for export to the United States and other countries at prices which did not include the tax, and that, therefore, there is no substantial evidence in the record to support the judgment below.

Stated differently, counsel for the Government contends that the Japanese textile-consumption tax law, so far as it is pertinent to the issues here, is substantially the same as the German law considered by the Supreme Court in the *Passavant* case, *supra;* that there has been no change in the statutory definition of "market value" since the decision in that case, and that, therefore, that decision is controlling of the issues here.

The Japanese consumption-tax law, according to the translation submitted by the Government, so far as it is pertinent to the issues here, reads:

ARTICLE 1. With the exception of cotton textiles, consumption tax is imposed on textiles in accordance with this law.

\*      \*      \*      \*      \*      \*      \*

ART. 2. The rate of consumption tax is ten (10) per cent of the value of the textiles.

ART. 3. Subject to the provisions of ordinance, consumption tax is remitted for the following:

1. Textiles for export to a foreign country or textiles which are to be exported to a foreign country after being made into manufactured goods.

\*      \*      \*      \*      \*      \*      \*

Art. 12. Every person intending to manufacture or sell textiles shall declare such intention to the Government; *but this does not apply when he intends exclusively to manufacture textiles coming* under the provisions of art. 3, par. 1 (2.) (Italics ours.)

REGULATIONS FOR THE ENFORCEMENT OF THE TEXTILES-CONSUMPTION TAX LAW

(Imperial Ordinance No. 185 of March, 1910, as revised by Imperial Ordinance No. 45 of the year 1919, No. 585 of the year 1920, No. 50 of the year 1922, and No. 38 of the year 1926)

Art. 10. Any person who desires to have consumption tax remitted in respect of textiles for export to a foreign country or textiles intended for export to a foreign country after having been turned into manufactured goods, shall obtain the approval of the competent tax office each time delivery is taken from the manufactory; but the formality of obtaining such approval may be dispensed with in the case of a manufacturing place where textiles are manufactured solely for export, should the competent tax office have no objection in so far as supervision is concerned. The same applies to manufacturing places where textiles intended solely for export to a foreign country after being turned into finished goods are manufactured, if the competent tax office has no objection in so far as supervision is concerned.

In the case of the preceding paragraph, if the competent tax office has imposed conditions as to the transportation and storage of, and other matters relating to, textiles or goods made of textiles, no remission of consumption tax may be obtained unless such conditions are complied with.

In reappraisement cases it is the duty of the Appellate Division of the Customs Court to determine the facts in accordance with the weight of the evidence. The jurisdiction of this court in such cases is limited to questions of law only. Accordingly, if the judgment of the Appellate Division of the Customs Court is supported by any substantial evidence, it must be affirmed. *Downing & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 235, T. D. 42243; *United States* v. *Iwai & Co., supra.*

The court below held that the involved and similar merchandise differed from that used by the residents of Japan in weight, design, weave, and width; that it was not bought, sold, nor freely offered for sale for consumption in Japan; and that, therefore, it had no foreign values on the dates of its exportation.

In its opinion the court below quoted from the affidavit of Shinjiro Kamei, Exhibit 10, and stated that it was typical of the testimony submitted by counsel for importers; that it appeared that this witness, a resident of Yokohama, had been buying and selling silk piece goods at wholesale in the principal markets of Japan for a period of approximately 29 years; that he was one of the largest silk dealers in Japan, and that, although he did not deal in purely domestic silks, his experience had made him familiar with domestic market conditions. The court further found from this and other testimony that the involved and similar merchandise was made solely for the export

trade; that it was not sold or freely offered for sale in the principal markets of Japan in the usual wholesale quantities and in the ordinary course of trade for home consumption, and that it was but rarely used by the Japanese people.

The court quoted the following from the testimony of the witness, Kamei, regarding the construction placed upon the Japanese consumption textile tax law by the Japanese revenue authorities:

In the production of the export silks of the above description the textile-consumption tax does not enter into the cost of production. The manufacturers do not pay the tax even in the cases where the dealer diverts the silks to domestic uses. The tax therefore does not form part of the price charged by the manufacturers to the dealers. The tax, even in the rare instances where it is assessed on export silks, is essentially a consumption tax, depending not upon any sales but only upon the consumption of the silk by a domestic user. These silks may change hands several times before any question of tax arises. Thus the manufacturers may sell to a dealer located in the manufacturing district who in turn sells to export dealers located in the seaports. The tax does not accrue unless and until the silk is diverted by one of the series of buyers to a domestic user.

       \*       \*       \*       \*       \*       \*       \*

In the case of exportable silks with respect to which manufacturers do not pay the consumption tax and sell freely to the dealers at prices which do not include such tax, the revenue authorities do not impose upon any of the parties the obligation to export the silks. The only obligation imposed by the revenue authorities is that every transaction shall be traced from the manufacturers to the final disposition of the merchandise.

This witness also said—

In the regular course of business the only regular wholesale demand by domestic users for export silks of the above descriptions is by the domestic manufacturers of articles for exportation to the United States and other foreign countries. Small quantities of such articles are also sold by such manufacturers to the local shops in Yokohama and Kobe, who in turn sell principally to foreign tourists.

*The manufacturers who make articles for exportation and for the tourists' shops buy export silks of the above description from myself and other dealers who deal in export silks.*

*The domestic manufacturers of articles for export and for the tourist trade freely buy export silks of the above description from myself and other dealers in quantities of about 10 pieces at a time at prices which do not include nor have added thereto the textile-consumption tax.*

Most of these manufacturers of the made-up articles for exportation are located in Yokohama and Kobe. (Italics ours.)

The witness, Navjiro Yamamoto, testified that for 38 years he had continuously bought silk piece goods of the character of many of the items here involved at wholesale in the Japanese markets; that he had such export silk piece goods made up in Japan into "kimonos, coolie coats, haori coats, shirts, pajamas, and other articles," and that the wholesale prices for such silk piece goods did not include the textile-consumption tax. He then said—

Articles made from the export silks named in the paragraph 3 above are not ordinarily used by Japanese residents. The commercial practice, therefore,

which is in accordance with the Japanese revenue regulations, is for the manufacturer of such made-up articles to buy the export silks at wholesale at prices which do not include the textile consumption tax. He in turn sells the made-up articles at wholesale at prices which do not include the tax. Practically all of these articles are exported. They are handled to some extent, however, by retail stores in Yokohama and Kobe. The retail store is required by the regulations to make a record of any sale to a resident of Japan and pay the tax. The tax, however, does not form part of wholesale transactions. The manufacturers are willing to sell and do freely sell the export articles at wholesale at prices which do not include the tax.

Silk coolie coats, silk haori coats, and kimonos made of wide-width export silks named in the paragraph 3 above are not usually worn in Japan. Silk pajamas, silk handkerchiefs, silk shirts, and silk wearing apparent [apparel] of non-Japanese designs are used by foreign residents and by some Japanese residents, but they are distinctly export articles, and the textile-consumption tax is not required to be paid unless there is a retail sale to a resident of Japan. The tax is not paid ordinarily at the time of wholesale transactions and therefore does not form part of the wholesale selling prices in the regular wholesale business.

The testimony of these witnesses was corroborated by other evidence.

The court below, in considering the testimony of the witness, Kamei, stated that—

his sales were principally for export to the United States and other foreign countries, and also to *manufacturers of silk articles for exportation in Yokohama and Kobe; * * * that the domestic manufacturers of articles for export and for the tourist trade freely buy export silks of the above description from the affiant and other dealers in quantities of about 10 pieces at a time at prices which do not include nor have added thereto the textile-consumption tax.* (Italics ours.)

It clearly appears from the testimony relied upon by the court below that export silk piece goods, similar to that here involved, were freely offered for sale and sold in the usual wholesale quantities and in the ordinary course of trade in Japan to be there manufactured into silk articles, and that they were so sold and freely offered for sale at prices which did not include, nor have added thereto, the textile-consumption tax.

We are of opinion, therefore, that the silk piece goods had foreign values, and that the court below erred in holding to the contrary.

Ordinarily, under such circumstances, it would be necessary for this court to remand the case to the court below for findings as to foreign values. However, as the sole issue presented here by counsel for the Government is that the foreign values of the silk piece goods exceeded their export values by the amount of the tax, and, as the court below found that the tax was not an element to be considered in determining either the foreign or export values, we may dispose of the case upon its merits.

In its opinion, the court, among other things, said:

88

The facts overwhelmingly establish that the domestic and export markets are the same at the factory; * * *.

\* \* \* \* \* \* \*

In the case at bar "the ordinary course of trade" was between the factory and the dealer, and the evidence is conclusive that as between such parties the merchandise was sold in the open market, both domestic and for export, at a price which did not include the tax.

\* \* \* \* \* \* \*

This tax did not at any time become part of the market value. If the merchandise was directly sold for home consumption it was not paid by the manufacturer. The manufacturer permits his dealer and consumer to fight out that question; not the one who originally manufactured and sold the merchandise.

The court found, and we think this finding is supported by substantial evidence, that the tax did not accrue at the time the manufacturer sold and was not included in his wholesale prices; that the involved and similar silk piece goods were sold and freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of Japan at prices which did not include, nor have added thereto, the textile-consumption tax. This being so, the tax was not an element to be considered in determining foreign values. Accordingly, the error committed by the court below was not prejudicial to the Government.

It is argued, however, by counsel for the Government that the Japanese textile consumption tax law, properly construed, provides that the tax accrued at the time the involved and similar merchandise was sold by the manufacturers; that the manufacturer's wholesale prices included the tax, and that, therefore, as a matter of law, the foreign values of the merchandise included the amount of the tax. This argument is based upon the decisions in the cases of *United States* v. *Passavant, Roger & Gallet* v. *United States, International Sales Co. et al.* v. *United States, T. D. Downing* v. *United States, supra.*

We are unable to adopt these views.

In the case of *United States* v. *Passavant, supra,* it appeared that a duty or tax was imposed by the German Government on the merchandise there involved when it was sold by the manufacturers "for consumption or sale in the markets of Germany," but when it was purchased "in bond, or consigned while in bond, for exportation to a foreign country, this duty" was "remitted by the German Government." It further appeared in that case that the local—

appraiser found, as a matter of fact, that the market value in Germany was equal to the invoice price plus the home duty.

The importer did not appeal to reappraisement, but, when the merchandise was assessed for duty by the collector in accordance with the value returned by the appraiser, filed protests, claiming that, as a matter of law, the German duty was not a proper element to be considered in determining foreign-market value. It appeared from the

certificate of facts, as stated by the Supreme Court, that, although the German duty was not collected until the merchandise went into consumption in Germany, it accrued at the time the manufacturer sold, and his wholesale price included it, and that purchasers paid a "price covering the tax." Accordingly, the court held that the tax was a proper element to be considered in determining the "actual market value or wholesale price of the merchandise as bought and sold in usual wholesale quantities" in Germany and, in this connection, said—

As the question in this case was what was the general market value and wholesale price of cotton velvets, as bought and sold in the principal markets of Germany, the fact that the German duty was not in fact paid on such goods when exported is immaterial. Exoneration from its payment was a mere special advantage extended by the German Government, as we have said, in promotion of manufactures and commerce. The *appraiser found, as a matter of fact,* that the market value in Germany was equal to the invoice price plus the home duty, but he did not therefore include that item as a substantive item independent of the market value, and add it thereto to make dutiable value, though in ascertaining the market value in Germany *he properly recognized the fact that that duty formed part of the purchase price in the markets of that country.* (Italics ours.)

In the cases of *International Sales Co. et al.* v. *United States, Roger & Gallet* v. *United States, Downing & Co.* v. *United States, supra,* similar situations were presented.

In the case at bar, however, the facts are entirely different. The court below found as a fact, and that finding is sustained by substantial evidence, that the Japanese textile-consumption tax did not accrue when the involved and similar merchandise was sold by the manufacturer; that his wholesale price did not include it; that purchasers at wholesale did not pay "a price covering the tax," and that the export silk piece goods and articles made therefrom were sold and freely offered for sale at prices which did not include, nor have added thereto, the consumption tax.

It may be, as argued by counsel for the Government, that the Japanese tax law is open to the construction that the tax accrues at the time the manufacturer sells. However, witnesses for the importers, qualified by years of experience in the textile wholesale trade in Japan to speak authoritatively on the subject, stated that, so far as the involved and similar merchandise was concerned, the tax did not accrue at the time the manufacturer sold; that it was not included in the manufacturer's wholesale price; that it accrued, and was collected, only in the event the merchandise was sold at retail to a Japanese resident, and that this was the accepted construction placed upon the law by Japanese revenue officials under whose supervision it was administered.

We are of opinion that the testimony of these witnesses was competent; that it is consistent with the provisions of the Japanese tax law, and that the court below did not err in considering and accepting

it. *United States* v. *Philbrick*, 120 U. S. 52; *Slater* v. *Mexican National Railroad Co.*, 194 U. S. 120, 130.

We conclude, therefore, that, by adding the tax to the invoice values, the appraiser included it as a substantive item, independent of foreign and export values. This he had no right to do. *Sternfeld* v. *United States*, 12 Ct. Cust. Appls. 172, T. D. 40065; *United States* v. *Tadross & Co. et al.*, 14 Ct. Cust. Appls. 10, T. D. 41528.

Although it was said in the decisions in the *Innis, Speiden & Co.* and the *Friedlaender Co.* cases, *supra*, that appeals from illegal appraisements should be dismissed by the trial court, that question was not discussed nor considered on its merits in those cases. On more mature consideration, we think that, in such cases, the court should enter judgments holding the merchandise not subject to appraisement prior to the final decision in the test or pending case. *United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. (Customs) 288, T. D. 43716, and cases cited therein. When the test or pending case has been finally decided, it will then be the duty of the local appraiser to appraise the merchandise covered by the duress entries. *United States* v. *Friedlaender Co., supra.*

As to the merchandise covered by item 6, schedule 3, of the stipulation, the additions made by the appraiser to cover the textile-consumption tax should be deducted from the appraised value found by him. However, the collector will, of course, assess duty upon the entered value of such merchandise where the entered value is higher than the final appraised value—for the reason that none of those cases involve proper duress entries.

For the reasons stated, the judgment is *modified*, being *reversed* as to all cases mentioned in item 7 of the stipulation hereinbefore referred to, and in all other respects *affirmed*. The cause is *remanded* for proceedings consistent with the views herein expressed. The clerk of this court will transmit to the United States Customs Court a certified copy of the stipulation referred to herein.