UNITED STATES *v.* PASSAVANT.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 129. Argued December 1, 1897. — Decided January 8, 1898.

In proceedings brought before the board of general appraisers by protests under § 14 of the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131, to review decisions of a collector of customs upon entries, the board has jurisdiction to inquire into and impeach the dutiable valuation reported to the collector by the appraiser upon which the collector assessed the rate of duty to which the merchandise was subject.

The " German duty," which is a tax imposed by the German Government on merchandise when sold by manufacturers for consumption or sale in the markets of Germany, but is remitted by that Government when the goods are purchased in bond or consigned while in bond for exportation to a foreign country, was lawfully included by the appraiser in his estimate of the dutiable value of the importation in question in this case.

THIS case came to this court on the following certificate from the United States Circuit Court of Appeals for the Second Circuit:

" A judgment or decree of the Circuit Court of the United States for the Southern District of New York having been made and entered on the 30th day of January, 1895, by which it was ordered, adjudged and decreed that there is no error in certain proceedings before the board of United States general appraisers in this cause, and that their decision therein be, and the same hereby is, in all things affirmed; and an appeal having been taken from said judgment or decree to this court by the above-named appellants, and the cause having come on for hearing and argument in this court, certain questions of law arose concerning which this court desires the instructions of the Supreme Court of the United States for the proper decision of said cause.

" The facts from which said questions arise are herewith submitted and certified as follows:

" 1. Certain merchandise, consisting of cotton velvets, was imported from the empire of Germany into the port of New

York by the appellees in various steamers between May 22, 1891, and March 13, 1892, and was entered at the custom house and appraised by the appraiser.

"2. The merchandise was originally imported into Germany in the gray, and was subjected to processes of dyeing and finishing, and was put in bond in that country.

"3. The collector classified the merchandise for duty under paragraph 350 of the tariff act of October 1, 1890, at 20 per centum ad valorem and 14 cents per square yard, and assessed the said rates of duty upon the dutiable value of the merchandise decided by the appraiser and reported by him to the collector.

"4. The merchandise was of a description provided for *eo nomine* in said paragraph 350, and was properly classified for duty under that section.

"5. The invoices stated certain prices as the net invoice value of this merchandise. The invoices stated also certain additional sums, under the heading ' German duty.'

"6. This German duty is a tax which is imposed by the German Government on the merchandise when it is sold by the manufacturers thereof for consumption or sale in the markets of Germany, but when the merchandise is purchased in bond, or consigned while in bond, for exportation to a foreign country, this duty is remitted by the German Government, and is called ' bonification of tax,' as distinguished from being refunded as a rebate.

"7. This German duty or tax is the amount of the duty levied by the German tariff upon the goods when consumed in Germany. It is collected when the finished product goes into consumption in Germany, but is remitted when the finished product is sold in bond for exportation.

"8. The merchandise can be purchased in bond for exportation in the principal markets of Germany at the net invoice prices and without paying the so-called German duty. The merchandise involved in this action was so purchased for exportation.

"9. In estimating and appraising the actual market value and wholesale price of such merchandise at the time of ex-

portation to the United States in the principal markets of the country from whence imported, the appraiser decided that the dutiable value of such merchandise equalled the sum of the net invoice value and the German duty added together, and reported to the collector this decision as to the dutiable value of the merchandise appraised.

"10. In estimating this dutiable value the local appraiser added as an element of dutiable value to the net invoice value these amounts specified in the invoices and entries under the name of 'German duty.' Such amounts have been included by the importers in their entries under duress, to avoid threatened penalties under the law.

"11. The importers did not call for any reappraisement of the merchandise, but within ten days after the liquidation by the collector of each entry, and the assessment by him of the rates of duty aforesaid upon the dutiable valuation so reported to him by the appraiser, filed protests under section 14 of the act of June 10, 1890, against the decisions of the collector, of which the following protest is one, to which the others are similar :

[Here followed the protest.]

"12. The board of United States general appraisers, acting upon said protests, reversed the decisions of the collector on the ground that the so-called German duty was not a lawful element of dutiable value.

"13. Thereupon the collector applied to the Circuit Court of the United States for the Southern District of New York by petition praying for review of said decision by the board, pursuant to section 15 of the act of June 10, 1890, and the said Circuit Court upon said petition ordered the board of United States general appraisers to return to the Circuit Court the record and the evidence taken by them, together with a certified statement of the facts involved in the case and their decision thereon, and the said board of general appraisers thereafter made such return ; and the Circuit Court affirmed the decision of the board as aforesaid.

"14. It is admitted that Frederick S. Passavant, Karl Kotzenberg, William Sandhagen, Heinrich Meyer, Arthur W.

Watson and Oscar Passavant, the importers, are the persons composing the firm of Passavant & Company.

"Upon the foregoing facts this court, for the proper decision of said cause, desires instruction upon the questions of law following:

"(1) In proceedings brought before the board of general appraisers by protests, under section fourteen (14) of the act of June 10, 1890, to review the collector's decisions upon the entries in this case, had the board jurisdiction to inquire into and impeach the dutiable valuation so reported to the collector by the appraiser, as above stated, and upon which the collector assessed the rate of duty to which the merchandise was lawfully subject?

"(2) If the first question is answered in the affirmative, was the 'German duty' lawfully included by the appraiser in his estimate of dutiable value?"

*Mr. Solicitor General* for the United States.

*Mr. Edwin B. Smith* for Passavant.

MR. CHIEF JUSTICE FULLER, after stating the case as above, delivered the opinion of the court.

The thirteenth section of the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131, relates solely to the appraisement of imported merchandise, and declares that the decision of the board of general appraisers, when invoked as provided, "shall be final and conclusive as to the dutiable value of such merchandise," and directs the collector to ascertain, fix and liquidate the rate and amount of duties to be paid on such merchandise, and the dutiable costs and charges thereon.

Section 14 provides that the decision of the collector as to the "rate and amount of duties, . . . including all dutiable costs and charges, and as to all fees and exactions of whatever character, except duties on tonnage, shall be final and conclusive," unless the importer protests and appeals to

the board of general appraisers. This section clearly allows and provides for an appeal by the importer from the decision of the collector, as to both rate and amount of duties, as well as dutiable costs and charges, and as to all fees and exactions.

By section 15 it is provided that "if the importer, . . . or the collector . . . shall be dissatisfied with the decision of the board of general appraisers, as provided for in section 14 of this act, as to the construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, they or either of them, may . . . apply to the Circuit Court . . . for review of the questions of law and fact involved in such decision."

In *United States* v. *Klingenberg*, 153 U. S. 93, 102, it was said by Mr. Justice Jackson, speaking for the court: "The right of review by the Circuit Court is coextensive with the right of appeal to the board, as to all matters except the dutiable value of the imported merchandise, as to which the decision of the board of general appraisers is by section 13 made conclusive. Now, by section 14 of the act, if the decision of the collector imposes an excessive amount of duties, under an improper construction of the law, the importer may take an appeal to the board of general appraisers, whose decision on such questions is not made conclusive as it is in respect of the dutiable value of the merchandise, and not being conclusive, it is subject to review under the express provisions of section 15."

The purpose of section 13 is to afford the importer or collector the right to call for a reappraisement by a general appraiser or a board of general appraisers, to review the decision of the local appraiser or a general appraiser as to the correct amount of the dutiable value of the merchandise, and is distinct and separate from the remedy by protest.

Under section 7 the collector is to determine for himself the question of what is the invoice value of the goods, and, in doing this, he may add such charges as he considers to be dutiable, but his decision in this respect is not in the nature of an appraisement, and may be attacked by protest. And

while the general rule is that the valuation is conclusive upon all parties, nevertheless the appraisement is subject to be impeached where the appraiser or collector has proceeded on a wrong principle contrary to law or has transcended the powers conferred by statute. *Oberteuffer* v. *Robertson*, 116 U. S. 499 ; *Badger* v. *Cusimano*, 130 U. S. 39 ; *Robertson* v. *Frank Brothers Company*, 132 U. S. 17 ; *Erhardt* v. *Schroeder*, 155 U. S. 124 ; *Muser* v. *Magone*, 155 U. S. 240.

These decisions were made under prior similar legislation as to the finality of the appraisement, and when an action against the collector was provided by section 3011 of the Revised Statutes as the remedy for an illegal exaction of duties. Section 3011 was repealed by the act of June 10, 1890, and in *Schoenfeld* v. *Hendricks*, 152 U. S. 691, it was held that such an action could not be maintained, as it was not authorized by statute, and would not lie at common law because the money was required to be paid into the Treasury by section 3010 ; so that the importers were remitted to the remedies provided in the latter act. Whether the dutiable value in this case was erroneously increased by the unauthorized addition of an independent item to the market value, as asserted by the importers, was a question of law, and properly carried to the board of general appraisers by protest and appeal.

We think that section 14 furnishes the means of redress for illegal action, and that the board of general appraisers has the same power under this section to inquire into the legality of an assessment as it has under section 13 to see whether or not the valuation is excessive or insufficient through an error of judgment.

The first question must, therefore, be answered in the affirmative.

By section 19 of the act it is provided " that whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of

exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, cases, crates, boxes, sacks and coverings of any kind, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States,   .   .   ."

By section 10 it is made the duty of the appraisers "by all reasonable ways and means in his or their power to ascertain, estimate and appraise (any invoice or affidavit thereto or statement of cost or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels or quantities, and actual market value or wholesale price of every of them, as the case may require."

Was the action of the appraiser lawful in treating the so-called German duty as an element of value in determining the actual market value or wholesale price of these cotton velvets, at the time of exportation, in the principal markets of Germany?

What was to be ascertained was the actual market value or wholesale price of the merchandise as bought and sold in usual wholesale quantities at the time of exportation, in the principal markets of the country from whence imported. This market value or price was the price in Germany and not the price after leaving that country, and the act does not contemplate two prices or two market values.

The certificate of facts states that the German duty is imposed on merchandise when "sold by the manufacturers thereof for consumption or sale in the markets of Germany;" and "is collected when the finished product goes into consumption in Germany." As the tax accrues when the manufacturer sells, his wholesale price includes it, and the purchaser who buys these cotton velvets' in wholesale quantities in the German markets pays a price covering the tax,

and that is the price for the merchandise when bought and sold in those markets.

Doubtless, to encourage exportation and the introduction of German goods into other markets, the German Government could remit or refund the tax, pay a bonus, or allow a drawback.

And it is found that in respect of these goods when " purchased in bond, or consigned while in bond, for exportation to a foreign country, this duty is remitted by the German Government, and is called ' bonification of tax,' as distinguished from being refunded as a rebate." The use of the word " bonification " does not change the character of this remission. It is a special advantage extended by government in aid of manufactures and trade, having the same effect as a bonus or drawback. To use one of the definitions of drawback, it is " a device resorted to for enabling a commodity affected by taxes to be exported and sold in the foreign market on the same terms as if it had not been taxed at all."

But the laws of this country in the assessment of duties proceed upon the market value in the exporting country and not upon that market value less such remission or amelioration as that country chooses to allow in accordance with its own views of public policy.

*Muser* v. *Magone*, 155 U. S. 240, is quite in point. In that case the appraisement was attacked on the ground that certain items or elements of value had been illegally added to and included in the dutiable value. The imported goods were cotton embroideries. The cloth was purchased in the gray by the importers at Manchester; sent to St. Gall, Switzerland, where the embroideries were finished; and thence exported to the United States. The importers owned the plant at St. Gall. The entered value of the goods was raised by the appraisers, and the importers protested for the reasons that commissions and non-dutiable charges had been illegally included in the market value; that the goods should have been appraised at their actual market value when in the gray, adding the cost of finishing and laundering them; and on other grounds; the protest being particularly directed to the

alleged illegality of the valuation because one of the constit-
uent elements of the value as found was illegally included.
The appraisement was held conclusive in the absence of fraud,
and this court, among other things, said :

"The question was not whether through the special advan-
tages which Muser Brothers enjoyed, the actual cost to them
may have been less than what was decided to be the actual
dutiable value of their goods, for the latter was determined
by the general market value and wholesale price of all goods
of the same description.  .  .  .

"The issue made by the protest was that the valuation was
illegal because including certain specified incidental expenses,
(one or more of them,) as for designs, salary of buyer, clerk
hire, rent, interest and percentage on aggregate cost. Upon
the theory of an ascertainable market value at St. Gall, these
were matters to be considered and in a sense included, but
not in the sense of substantive items independent of market
value, added thereto to make dutiable value.  .  .  .  The
course of business at St. Gall in respect of these embroideries
was peculiar, and to reach a result, in estimating the value,
required the consideration of many elements making up the
amount which actually represented the pecuniary basis of
transactions.   How these various elements impressed the
general appraiser, and what grounds influenced or controlled
his mental processes, were matters in respect of which he
could not be interrogated, since his decision, when approved
by the collector, was final and could not be reviewed and the
verdict of a jury substituted.  .  .  .  The adjudication was of
true market value, and did not consist in taking market value
and adding the cost and charges specified in section 2907 in
order to get at dutiable value." *United States* v. *Kenworthy*,
28 U. S. App. 450.

As the question in this case was what was the general
market value and wholesale price of cotton velvets, as bought
and sold in the principal markets of Germany, the fact that
the German duty was not in fact paid on such goods when
exported is immaterial.  Exoneration from its payment was
a mere special advantage extended by the German Govern-

ment, as we have said, in promotion of manufactures and commerce. The appraiser found, as matter of fact, that the market value in Germany was equal to the invoice price plus the home duty, but he did not therefore include that item as a substantive item independent of the market value, and add it thereto to make dutiable value, though in ascertaining the market value in Germany he properly recognized the fact that that duty formed part of the purchase price in the markets of that country.

The second question must also be answered in the affirmative.

*The answers indicated above will be so certified.*


MR. JUSTICE BROWN, with whom concurred MR. JUSTICE PECKHAM, dissenting.

I concur in the opinion of the court that the first question requires an affirmative answer, but I think that the second question should be answered in the negative. In estimating the dutiable value of goods the collector added to the net invoice value what is known as the German duty, which was never paid, and which formed no part of the "market value or wholesale price" of these goods. It does not appear what proportion of this class of goods was imported into Germany for exportation, as distinguished from those imported for consumption, but it clearly appears that there were two entirely distinct and separate prices: one of which was paid for the goods for exportation, and the other for consumption. It seems a great hardship that the defendants, Passavant & Company, should be charged with a price which they did not pay and which was no part of the value of the goods as they were purchased by them in Germany. If there be, in fact, two wholesale prices for these goods in the same markets, I know of no reason why the collector should not recognize this fact and charge the importer with that one of the wholesale prices which he actually paid, and for which others under the same circumstances could obtain the goods.

The construction given to the statute by the court is unneces-

sary, and the effect is to increase the cost of the article to the consumer by adding to the price the amount of a tax in fact not paid by the importer. For aught that appears in this record, the sales for exportation may have been ten times as great as those for domestic consumption, and we do not understand why the prices realized in the latter sales should be arbitrarily selected by the Government as the actual market value or wholesale price of the articles.