## HUGHES FAWCETT, INC. v. UNITED STATES

**No. 4587.**—Invoices dated Upice, Czechoslovakia, August 24, 1934, etc.
Certified August 27, 1934, etc.
Entered at New York, September 8, 1934, etc.
Entry No. 67146, etc.

## Third Division, Appellate Term

(Decided June 2, 1939)

*Lane & Wallace* (*William Young* of counsel) for the appellant.
*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellee.

Cline, Judge: This is an application for review of the decision of the trial judge (Reap. Dec. 4360) in finding the value of flax yarn imported from Czechoslovakia at various dates during the period from September 1934 to March 1937. Appeals for reappraisement covering twenty-eight separate shipments were consolidated and tried together.

The United States appraiser added 13 per centum of the value to the unit invoice price of the merchandise covered by reappraisement appeal 110420–A and to that value he added the same packing charges which were added on the invoice and included in the entered value. In all of the other cases the importer added 13 per centum to the unit invoice values to meet the advance made by the appraiser in the test case covered by the entry in reappraisement appeal 110420–A.

At the hearing before the trial judge it was agreed between counsel that the merchandise should be appraised at the foreign value thereof, and the only question for decision is whether the foreign value of the goods includes the additional 13 per centum added by the appraiser.

The trial judge found that there was no export value of the merchandise and that the unit invoice values, plus 13 per centum of such value and plus the packing charges noted on the invoices, were the foreign values of the goods.

The appellant contends that the trial judge erred in finding that the unit invoice values of the yarn should have been increased by the addition of 13 per centum. It appears that a manufacturer's 13 per centum sales tax, known as a "pauschal" (lump sum) tax was assessed when manufactured goods were sold in the markets of Czechoslovakia and that flax yarn manufactured in Czechoslovakia was subject to this tax. The plaintiff points out, however, that the law provided for a refund of this 13 per centum tax when yarn upon which such tax had been paid was woven into cloth or other manufactured articles and such articles sold in the markets of Czechoslovakia, which articles themselves were subject to a sales tax of 6½ per centum. This 13 per centum tax on the yarn was remitted when the 6½ per centum tax was paid on the woven article. The appellant contends that inasmuch as the 13 per centum tax is remitted or refunded under such circumstances it should not have been included in the foreign-market value of the yarn.

The importers introduced the testimony of Mr. Max Buxbaum, a member of the firm that manufactured the yarn in Czechoslovakia. He testified that his firm is engaged both in spinning yarns and in weaving them into manufactured articles; that occasional sales of yarns were made by the firm to other weavers in Czechoslovakia; that on such sales they were compelled by law to add to the invoice 13

per centum of the price, representing the above-mentioned pauschal tax, and, having collected such tax from the purchaser, to pay it over to the local tax collector; that, upon payment of the tax thus collected from the purchaser, the spinner was given a receipt for that amount by the tax collector, which receipt he turned over to the purchaser of the yarns; that the same pauschal tax law also fixes a tax of 6½ per centum on the selling price of articles woven or manufactured from such yarns; that a weaver paid this latter tax each quarter on woven articles sold by him during the preceding three months, and in making this payment he was allowed to deduct as a credit from the total of all of the 6½ per centum taxes the total of all of the 13 per centum taxes for which he could produce receipts; that it was not necessary that any of the woven articles upon which he paid the 6½ per centum tax should have been woven from the yarns for which he had receipts. The oral testimony was somewhat confused and in order that the record might clearly set forth the facts regarding these taxes, the following statements were made a part of the record:

Mr. YOUNG. Your Honor, for the clarity of the case, I am willing to concede that the man who pays the 6½ percent tax, has a tax to be paid to the government.

Judge KINCHELOE. On manufactured stuff?

Mr. YOUNG. On anything he manufactured, any tax he has to pay off, he has a 6½ percent tax to pay, and then he can deduct the 13 percent he paid to the spinner.

Judge KINCHELOE. And only then.

Mr. YOUNG. And only then, is that right?

The WITNESS. Yes.

Judge KINCHELOE. You concede that on the record?

Mr. YOUNG. Yes.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Mr. YOUNG. I would like also to get on the record that the 13 percent paid to the spinner may be deducted from any tax that the weaver owes to the government.

Mr. AUSTER. After manufacturing.

Mr. YOUNG. Whether it is from that yarn or any other yarn, it is immaterial, he can deduct it from any 6½ percent tax.

Mr. AUSTER. Any 6½ percent manufacturer's tax, whether it is manufactured from the particular individual manufacturer or any others.

Mr. YOUNG. Any others, yes, it is only a turnover tax.

Mr. AUSTER. It is a manufacturer's tax.

Judge KINCHELOE. Do you want to concede that, too, Mr. Auster?

Mr. AUSTER. I believe that is the circumstances, but as your Honor knows, I came into this in a hurry——

At the next hearing of the case, counsel for the importer introduced three affidavits; namely, the first of Max Buxbaum who testified in the original hearing, the second of Otto Posselt and the third of Oskar Pfefferkorn. These affidavits were marked Collective Exhibits 1, 2, and 3. He introduced also a statement of the Union of Czechoslovak

Textile Industries, signed by the chairman and the secretary, the signatures having been certified by the United States consul. This document was marked Collective Exhibit 4.

These exhibits add little to the oral testimony introduced at the first hearing but annexed to them are certain documents, consisting of authenticated copies of tax returns which corroborate the statements of the witness as to the method of collection and payment of the 13 per centum and the 6½ per centum taxes. It appears from Exhibit 1 that on cloth manufactured by Buxbaum Bros. from yarns spun in the mill of the same firm the only tax collected was 6½ per centum on the manufactured cloth, but where the firm sold yarns to other weavers a tax of 13 per centum was added to the sales value of the yarn. The exhibit contains also an acknowledgment of the revenue administration office showing that where the amount of the refund of the 13 per centum tax exceeded the total assessment of the 6½ per centum tax for any period the Government agency acknowledged a credit balance due the taxpayer.

Exhibit 2 is an affidavit of a dealer in flax yarns. It appears from this exhibit that the dealer was required to pay the 13 per centum tax to the seller when the yarns were bought and he collected the 13 per centum from the person who bought the yarns from him, so that the dealer did not have to pay any tax, the amount of tax collected from his customer equaling the amount he had to pay when he purchased the yarns.

Exhibit 3 is an affidavit of a manufacturer of cotton and linen cloth. It appears from this exhibit that the manufacturer was obliged to pay a tax of 6½ per centum on the manufactured cloth he sold but he was entitled to a credit of the 13 per centum tax he had to pay the seller of the yarn and that this amount could be deducted from the total tax at the rate of the 6½ per centum he was forced to pay on the manufactured cloth. Attached to the affidavit is a petition directed to the Minister of Finance requesting that the credit on the 13 per centum tax be allowed against a payment of house taxes.

Exhibit 4 states the reasons for the assessment of the 13 per centum tax on the sale of the yarn and refund of the same when the 6½ per centum tax is paid on the finished cloth made from the yarn. It appears from this exhibit that small weaving mills could easily escape the 6½ per centum tax on woven goods and therefore the 13 per centum tax was assessed on the selling price of the yarns which are made by large mills, as an interim tax which could be refunded upon the payment of the 6½ per centum tax on the manufactured goods.

Counsel for the Government introduced four reports of customs agents which were received in evidence without objection and marked Collective Exhibits 5, 6, 7, and 8 respectively. These exhibits state

the same facts in regard to the assessment of the so-called "pauschal" turnover tax heretofore set forth and we deem it necessary to comment on such facts only as have not been heretofore discussed.

Exhibits 5 and 6 are reports of Treasury Representative Wilson C. Beers, both dated December 7, 1934. It is stated therein that the Treasury representative visited the factory of Buxbaum Bros. and examined the books; that no written or oral agreement existed between the manufacturer and the importer in this case in the matter of restricting the sales for export to the United States, but the manufacturer decided that sales of flax yarns would not be made to any other importer in the United States in order that Hughes Fawcett, Inc., might incur less competition; that the prices were not always the same because of the fact that the values of raw materials were continually changing; that the pauschal turnover tax was not imposed on sales of flax yarn for export; that the invoices covering all sales of flax yarns by Buxbaum Bros. in Czechoslovakia from April 1, 1934, to date of the examination contained a separate charge of 13 per centum for pauschal turnover tax.

Exhibit 7 is a report by Hugo Wallenfels, dated March 23, 1937. It relates to an investigation made at the Tax Office of the Czechoslovakian Ministry of Finance at Prague. Attention is directed to minor changes in the tax law of March 28, 1934, Decree 61, by Decrees 126 and 287 of June 27, 1934, and December 22, 1934, but the procedure appears to be substantially the same as heretofore related. Copies of Decrees 126 and 287, with translations thereof, are attached to the exhibit.

Exhibit 8 is a copy of another report of Treasury Representative Wilson C. Beers, dated July 3, 1934. This seems to be the first report filed by that agent. It relates to the taxes as promulgated by Tax Decree 61, of March 28, 1934, a copy, with translation thereof, being attached. It is stated in the report that the manufacturer of the yarns may either charge the tax separately on the invoices or include it in the unit selling price. The tax decree explains in detail just how the 13 per centum shall be paid and how credit therefor may be obtained by the firm subject to the 6½ per centum tax on manufactured fabrics. It appears also that if the total of the 13 per centum tax for which credit is demanded exceeds the total of the 6½ per centum tax, the difference may be refunded in cash, but it was necessary for the claimant to file a petition making the proper claim. This is shown in the following statement:

Should the sum of the amounts to be deducted be greater than the Pauschal (lump sum) turnover tax to be paid, the difference after covering all other remaining tax indebtedness of the person required to pay the tax, shall be entered on a petition and when submitted to the proper Finance authorities, within the period specified for the declaration of such claim, will be paid back in cash.

We have carefully examined the record and all of these eight exhibits and are of opinion that the trial judge accurately described the procedure respecting the assessment and collection of the pauschal turnover tax by the Czechoslovakian Government. The trial judge found that the 13 per centum tax assessed on the sales value of the flax yarns was a part of the market value thereof, citing *United States* v. *Passavant*, 169 U. S. 16; *Roger & Gallet* v. *United States*, 12 Ct. Cust. Appls. 201, T. D. 40181, and *International Sales Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 506, T. D. 40699.

Counsel for the appellant contends that the decisions cited are not applicable to the merchandise herein involved for the reason that the tax in those cases was not refunded or remitted as was the tax on flax yarns in this case under the conditions mentioned. Counsel refers to a statement in *Hugo Reisinger (Inc.) et al.* v. *United States*, 20 C. C. P. A. 67, T. D. 45683, relating to a tax of 20 per centum on illuminants when destined for consumption in Germany. It appears that there was a provision in the German tax law providing that the tax might be refunded when the illuminants were not used. The court declined to discuss that point, saying:

> Whether the paragraph has received construction, judicial or otherwise, by German authority does not appear from the record before us.

Nevertheless, the court held that the 20 per centum tax was a part of the market value. The court said:

> Appellants have also argued that paragraph 9 of the German act "provides for refunding the tax on illuminants which are not used."
>
> Even were this correct to the full extent alleged, we do not think, considering the German law as a whole, that it would be conclusive that the tax does not enter into the foreign value as same is defined in the United States Tariff Act of 1922.

Section 402 (c) of the Tariff Act of 1930 provides as follows:

> (c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The main point in issue in this case is: What was the price at which the merchandise was freely offered for sale to all purchasers in the principal markets of Czechoslovakia, in the usual wholesale quantities and in the ordinary course of trade? It is clear from this record that whenever flax yarns were offered for sale in Czechoslovakia it was necessary to have the price include a charge of 13 per centum of the

unit value for pauschal turnover tax. While a dealer who purchased such yarns and sold them again without advancing the same did not have to pay to the Government the 13 per centum tax, the price he was compelled to pay for the yarns included it and the price he received for the yarns included it. The tax was a part of the price in both transactions although it appears that it was not necessary to add a second tax equalling 13 per centum on the second sale. When a manufacturer of yarns sold them to a weaver or any one else, he had to include a charge of 13 per centum as a part of the sales price. The invoice values always included the tax, either as a special item or otherwise included in the value of the yarns. That invoice value, which included the tax, was the price at which the yarns were freely offered for sale and that value is the sole criterion upon which the "foreign value" of imported merchandise is based. The fact that the purchaser could in a subsequent proceeding recover the tax paid is immaterial.

The trial court found that there was no export value, evidently basing such finding on the theory that the importer was the sole purchaser of the goods of this particular manufacturer in the United States. The record does not show that other manufacturers of flax yarns in Czechoslovakia did not sell to other importers in the United States, but the record is clear that the 13 per centum pauschal turnover tax was not assessed by the Government of Czechoslovakia on flax yarns exported to the United States. Therefore, it is manifest that in any event the foreign value of the yarns would be higher by 13 per centum than the export value thereof. Under the statute the export value would not be the value upon which duty could be assessed because section 402 (a) provides that the dutiable value of imported merchandise shall be "the foreign value or the export value, whichever is higher."

We find the following facts:

1. The foreign values of flax yarn in Czechoslovakia of the kind herein involved at the time of exportation, in the usual wholesale quantities and in the ordinary course of trade, were the values at which such yarns were freely offered for sale in Czechoslovakia for home consumption, namely, the unit values shown on the invoices in these cases, plus 13 per centum.

2. That there were no export values, or at least the export values were not as high as the foreign values.

We hold that the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, is the proper basis for determination of the value of the merchandise herein and that the foreign values of the yarns in this case are the unit prices shown on the invoices before us plus 13 per centum and plus packing and cases. The judgment below is affirmed.