HUGHES FAWCETT, INC. *v.* UNITED STATES (No. 4273)[1]

United States Court of Customs and Patent Appeals, March 20, 1940

*Lane & Wallace* (*William Young* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

[Oral argument February 6, 1940, by Mr. Young and Mr. Auster]

Before, GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, appellate term, which affirmed the judgment of the single judge sitting in reappraisement, he having found that the proper dutiable value of the imported merchandise was the value returned by the appraiser.

The merchandise involved consists of 28 separate shipments of flax yarn imported from Czechoslovakia on various dates during the period from September 1934 to March 1937. The merchandise in reappraisement 110420–A was appraised at the unit invoice prices plus 13 per centum plus packing charges. In that case the importer had entered the merchandise at the unit invoice prices plus packing charges. In all the entries involved in the other reappraisement appeals, the importer added 13 per centum to the unit invoice prices to meet the advances made by the appraiser in the case covered by said reappraisement 110420–A. All 28 reappraisement appeals were consolidated and tried together.

The sole question involved is whether or not the said 13 per centum, which represented a so-called Czechoslovakian Pauschal (lump sum) tax should be included as a part of the foreign value of the merchandise involved. It is agreed by the parties hereto that neither the *per se* unit invoice prices of the merchandise nor the packing charges are in dispute and that the foreign value of the goods is the proper dutiable

value. It is conceded that the export value of the merchandise cannot be taken as the proper value of the goods. Whether this concession is prompted by the fact that it is lower or not higher than the foreign value or whether it is because sales for export were restricted to but one American importer is not disclosed.

Foreign value is defined by section 402 of the Tariff Act of 1930 as follows:

SEC. 402. * * *

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

There were introduced by the importer at the trial before the single judge sitting in reappraisement various exhibits consisting of the affidavits of a member of the exporting firm, of a dealer in flax yarns in Czechoslovakia, of a manufacturer of cotton and linen cloth in Czechoslovakia, and a certified statement by the Union of Czechoslovakian Textile Industries stating the purpose of the decree of the Minister of Finance putting into effect the said Pauschal tax. The Minister of Finance of Czechoslovakia has attached to the certified statement a certificate that the legal deductions contained in the statement are true. There were also introduced by the Government four exhibits, consisting of reports of customs agents and Treasury representatives, all of which related to the same subject matter as is covered by the aforesaid affidavits. One of the reports, Exhibit 8, contains a translation of the above-mentioned decree of the Czechoslovakian Minister of Finance. One witness, Max Buxbaum, member of the exporting firm, personally appeared at the trial and testified.

The testimony, the affidavits, and the reports are in substantial harmony on all matters pertinent here. In fact, there is little, if any, dispute as to the facts in this case. There is spirited controversy and contention between the parties as to the legal deductions to be drawn from the substantially undisputed facts.

It appears from the record that when the manufacturer or spinner of flax yarn sells it for any purpose, other than export, he is required by law to add to the price he receives for the unit value of the goods the 13 per centum Pauschal tax. The goods cannot be purchased for home consumption from a spinner or manufacturer of the yarn without the buyer paying a tax of 13 per centum based upon the wholesale selling price of the merchandise. A wholesale dealer who buys from the manufacturer of the yarn may pass the same on to other dealers without an additional 13 per centum tax being charged. When a dealer turns the yarn over to a processer he passes on the receipt for

the tax. An improver, such as a dyer of yarn or a manufacturer of cloth or other articles, by reason of having paid the 13 per centum tax when he obtained the yarn is permitted to deduct the amount so paid from a 6½ per centum tax on the value of his manufactured articles when sold. If the 13 per centum tax so paid is less than the 6½ per centum tax which he is required to pay on the sale of the manufactured article he merely deducts it therefrom, or he may deduct any part of the 13 per centum tax that exceeds the amount he is required to pay by virtue of the 6½ per centum tax from any other taxes he may owe the Government, which include land taxes, house taxes, profit taxes, etc. If the said 13 per centum tax exceeds all taxes he is required to pay on his said manufactured textile goods and other taxes, the above-mentioned decree provides that he may then, upon proper petition, within a certain time, apply for its return to him and it is repaid by the Government in cash. It is shown that as a practical matter, the manufacturer, instead of being paid in cash, is given credit until other taxes are to be paid.

The record shows that the said Pauscal tax law was passed to take the place of other laws relating to luxury taxes on textiles generally, it being its stated purpose, in part, to insure the payment of taxes which the Government wished to levy on textiles manufactured from yarn and that it thus taxed the material which went into the textiles; in other words, it was *taxation at its source*, thereby insuring that the little purchaser of small quantities of yarn who manufactured it into fabrics or other articles could not avoid payment of the manufacturer's tax. It is shown by the record that the payment of the 13 per centum tax on the wholesale selling price of the yarn "is in reality only a payment on account of the taxes" which the Government wishes to assess upon processed yarn going into consumption in Czechoslovakia and that the tax turned over to the Government by the yarn spinner never becomes a part of the yarn spinner's "costs, charges, and expenses." One of the purposes of the law, according to the only witness who testified, was that the Government by force of the new decree could in advance get the tax money which would eventually be levied on the sale of the improved product. The record clearly shows that anyone who purchased flax yarn in Czechoslovakia from a spinner at the time of exportation of the instant merchandise and who improved it could, in the manner before stated, secure the return of all the 13 per centum which he had paid. The record as a whole shows conclusively that it was not the purpose of the law to tax the yarn as such but that the taxing of the sale of the yarn was an expedient which, in the manner stated, was to make effective the collection of the taxes which it imposed upon the improved article sold in Czechoslovakia.

The facts stated by the appellate division of the trial court are in substantial agreement with the foregoing statements. The single

judge sitting in reappraisement, as well as the appellate division, came to the conclusion that since everyone who purchased the merchandise for home consumption was required to pay the 13 per centum, it should be included in the foreign value of the goods for dutiable purposes.

There is therefore presented to this court a question of law and not a question of fact. The single judge sitting in reappraisement in deciding the involved question of law relied upon the following cases for supporting authority: *United States* v. *Passavant*, 169 U. S. 16; *Roger & Gallet* v. *United States*, 12 Ct. Cust. Appls. 201, T. D. 40181; and *International Sales Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 506, T. D. 40699. While the appellate division did not discuss these authorities its decision indicates that the cases relied upon by the single judge sitting in reappraisement were relied upon by it.

We are of the opinion that the cases relied upon by the tribunals below and by the Government in this court do not support the holding that the 13 per centum so-called Pauschal tax should be added to the wholesale selling prices of the flax yarn involved in order to arrive at a proper dutiable value for the same. It is so clear as to require no citation of authority that where a tax of the exporting Government is levied upon the manufacture or sale of an article and is refunded upon export, said tax forms no part of the export value and we know of no decision (certainly none has been cited) which holds that a tax levied upon the sale of such article in such country for home consumption but which is refunded should form a part of the foreign value. The reason would seem to be clear. The tax so refunded would never enter into the value of the *goods* at any time.

The very nature of a sales tax levied by a foreign country on goods which go into consumption would suggest a reason why no case has been presented to any court, as far as we know, involving the refund of such a tax where the goods went into home consumption. Ordinarily there would be no object in levying a consumption tax and then refunding it. It must be remembered that the 6½ per centum consumption tax, which was the tax with which the taxing powers were primarily concerned here, is not refunded. This fact additionally confirms the conclusion that a yarn tax as such was not intended, and to here treat the 13 per centum as if it were a tax which was levied, collected and not returned, would bring an anomalous result. For instance, it might be asked what bearing would such a holding have upon determining the foreign value or cost of production of the article manufactured from the yarn if a question relating to either were before us.

The case of *United States* v. *Passavant*, *supra*, is not in point except by implication. That decision, we think, implies that if the tax there in controversy upon the goods when sold for home con-

sumption had been refunded, it would not have been a proper element of foreign value. To the same effect is the implication in the decisions relied upon by the Government which have any bearing upon the instant issue at all. In the *Passavant* case a tax was imposed by the German Government on merchandise when sold by manufacturers for home consumption but it remitted the tax when the goods were purchased for exportation. There was no showing in that case that the tax was ever remitted when the goods were sold for home consumption. The court therefore held, under the facts of that case, that the tax which everyone had to pay and which was shown to have been refunded on exportation became a part of the value of the goods for dutiable purposes—that is to say, a part of the foreign value. The facts in that case are wholly different from the facts in this case.

The decision of the issue in the instant case really turns upon the question as to whether or not, upon the undisputed facts at bar, the 13 per centum Pauschal tax levied upon the yarn should be regarded as returned or remitted. While the Government contends broadly that the tax is a part of the foreign value because everyone had to pay it, it also disputes the proposition that the tax should be regarded as refunded. It states that there are instances in which the tax could not be refunded. The only instances that we can conceive of where the tax might not be refunded would be where the yarn was purchased and hoarded and was never exported or processed further into manufactured articles, or where, subsequent to the purchase and payment of the tax to the spinner, the goods were destroyed.

It is hardly conceivable that it was within the contemplation of those responsible for the imposition of the Pauschal tax involved that such contingencies would happen. It was a turnover tax and as before stated was aimed at taxing the processed yarn and not the yarn as it came from the spinner. The whole picture produced by the record suggests that the 6½ per centum tax imposed upon the articles manufactured from the yarn was the only tax, as far as is material here, which the taxing authorities intended to place upon the textile products. It seems clear to us that both taxing provisions, the one for the yarn and the one for the processed article, contemplated that the product of the yarn spinner would either be exported or go into home consumption in the form of a manufactured article. Obviously, if the yarn was only dyed, its value might not be increased 50 per centum, but if it went into cloth or other garments it probably would be increased more than 50 per centum, and so it seems fair to assume from all the facts involved, including the manner of refund, that it was never the intention to impose any more or less tax upon the yarn than would be obtained by the 6½ per centum tax on the processed or manufactured articles. It must be remembered that the record

clearly discloses that if the 13 per centum exceeded the amount paid by reason of the 6½ per centum tax, the residue could be deducted from any other tax which was due the Government and that finally any further residue would be remitted in cash by the Government upon application or credited as aforesaid. It seems to us that this amounts to a complete and comprehensive arrangement for reimbursing anyone who would be likely to purchase yarn from the spinner.

In its contention that some purchasers of the yarn might not be refunded the 13 per centum tax, the Government has pointed out that the importer concedes that there might be a remote contingency where someone who paid the tax on the yarn, such as a wholesale purchaser who did nothing with the yarn, would not be reimbursed, and argues from that point that the decision by this court in the case of *American Glanzstoff Corporation* v. *United States*, 24 C. C. P. A. (Customs) 35, T. D. 48308, is warrant for the conclusion that this remote exception would justify a holding that the goods were not freely offered to all with the understanding that the 13 per centum turnover tax would be remitted. Even a casual reading of this case shows that it has no bearing on the facts at bar. There a German cartel provided for a so-called loyalty discount of 5 per centum which was withheld if the purchaser bought from outsiders. A few bought from outsiders and a majority of this court held that the offer was not freely made to all even though 99 per centum of the purchasers, if they chose to purchase under the restricted terms, would obtain the discount. No such restricted sale or lack of free offer is involved in the case at bar.

The decisions in the cases of *International Sales Co. et al.* v. *United States, supra,* and *Roger & Gallet* v. *United States, supra*—relied upon by the tribunals below—and that in *Hugh Reisinger, (Inc.) et al.* v. *United States,* 20 C. C. P. A. (Customs) 67—relied upon by the Government here—involve issues and holdings substantially similar to those of the *Passavant* case, *supra*. None of them hold that a tax levied on the sale of goods in the country of exportation for home consumption which is refunded, should be regarded as a part of the foreign value of the merchandise for dutiable purposes. This being true, no discussion of those cases is required.

We, therefore, hold that the 13 per centum item representing the so-called Pauschal tax should not have been regarded by the appraiser as a part of the dutiable value of the merchandise in controversy, and that the appellate division of the United States Customs Court erred in affirming the judgment of the single judge sitting in reappraisement, and its judgment so doing is *reversed* and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.