UNITED STATES *v.* WM. S. PITCAIRN CORP. (No. 4513)[1]

United States Court of Customs and Patent Appeals, March 30, 1946

*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*B. A. Levett* (*Meyer Ohlbaum* of counsel) for appellee.

[Oral argument December 4, 1945, by Mr. Donohue and Mr. Levett]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court (First Division) in reappraisements Nos. 142112–A and 142113–A.

[2] C. A. D. 334.

It appears from a stipulation entered into by counsel for the parties that the merchandise here involved "is earthenware and chinaware, consisting of tableware and so-called fancy articles exported from Birmingham, England, on September 16, 1941"; that it was entered in accordance with its export values as defined in section 402 (d) of the Tariff Act of 1930; that it was appraised by the local appraiser at the alleged foreign values as defined in section 402 (c) of that act, as amended by the "Customs Administrative Act of 1938"; that "16⅔% or 33⅓%," representing British purchase tax, was "added to the entered value by the appraiser respectively in reappraisements 142112–A and 142113–A"; that such taxes are "not applicable to the item of packing"; and that, at the time of exportation of the involved merchandise, such or similar merchandise was freely offered for sale to all purchasers for home consumption in Great Britain and for export to the United States in the usual wholesale quantities and in the ordinary course of trade. (What the usual wholesale quantities were is not stated in the record, nor is that issue involved in the case.) Other matters are stated in the stipulation, but it is unnecessary that we detail them here.

It appears from the brief of counsel for the Government that "The appraiser added 16⅔% to the entered value, plus packing, on all tableware items, and 33⅓% to the entered value, plus packing, on all items of so-called fancy articles other than tableware," and "It was agreed by the United States [as appears from the excerpt hereinbefore quoted from the stipulation entered into by the parties] that the additions were not applicable to the items of packing * * *"

The advances made by the appraiser to the entered values were made upon the theory that provisions of the so-called "British Purchase Tax Law," contained in part V of Finance (No. 2) Act, 1940, 3 and 4 Geo. 6. Ch. 48, were applicable to the involved merchandise.

The sole issue before us is whether the purchase tax of 16⅔ per centum or 33⅓ per centum, which the appraiser added to the entered values of the involved merchandise, is a proper part of foreign value as defined by section 402 (c), as amended, *supra*.

The statute in question reads:

SEC. 402. VALUE.

\* \* \* \* \* \* \*

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In addition to the stipulation hereinbefore referred to, which was introduced in evidence as Exhibit 2, counsel for the importer introduced in evidence Exhibits 1 and 3 to 18, inclusive.

Exhibit 1 is a copy of the British Purchase Tax Law. Exhibit 3 is a notice (No. 74) by the Commissioners of Customs and Excise, and is in the nature of a regulation and explanation of the British Purchase Tax Law. Exhibit 4, an affidavit by one Norman W. Bishell, manager of Doulton & Co., Ltd., shippers of the involved merchandise, is printed in the record and is representative of affidavits comprising Exhibits 5 to 18, inclusive, which, by stipulation of counsel for the parties, are not included in the printed record.

Counsel for the Government introduced in evidence Exhibit 19, which consists, among other things, of a report of an investigation *"concerning Chargeability of British Purchase Tax on Decorated Earthenware and China Tableware and Figures in September 1941"* (italics quoted), signed by Robert P. Chalker, vice consul of the United States of America at Birmingham, England, and dated February 12, 1943, together with notices Nos. 77, issued July 1941; 78, issued September 1941; and 79, issued September 1941, by the Commissioners of Customs and Excise; and certain affidavits of pottery manufacturers. The notices are in the nature of regulations and explanations of the British Purchase Tax Law.

The British Purchase Tax Law provides, in part, as follows:

Section

18. (1) A tax, to be called purchase tax, shall be charged, subject to and in accordance with the provisions of this Part of this Act, on the wholesale value of all chargeable goods bought under chargeable purchases.

(2) The following purchases, with the exception of purchases of goods by a registered wholesale merchant as stock for his business or by a registered manufacturer as materials, shall be chargeable purchases, that is to say—

(a) any purchase, made from a wholesale merchant or manufacturer (other than one who is not required by this Act to be registered) selling by wholesale, of goods which either—

(i) are in the United Kingdom at the time of the purchase, or

(ii) in the case of a purchase of unascertained goods, are in the United Kingdom at the time when the goods are appropriated to the purchase, or

(iii) having been imported into the United Kingdom are entered for home use by or on behalf of the seller under the purchase;

(b) in the case of goods imported into the United Kingdom which are entered for home use by or on behalf of the buyer under a purchase made before the goods are so entered, that purchase; and

(c) in the case of goods imported into the United Kingdom and entered for home use and not being the subject of a purchase which is a chargeable purchase under either of the two preceding paragraphs, the earliest purchase thereof made on or after their being so entered:

Provided that a purchase of goods imported into the United Kingdom but not entered for home use shall not be a chargeable purchase under paragraph (a) of this subsection.

A purchase which is a chargeable purchase by virtue only of paragraph (*b*) of this subsection is in this Part of this Act referred to as an "importer's purchase."

The merchandise in question is clearly chargeable goods within the purview of the British Purchase Tax Law, and no question is raised here as to the amount of the purchase tax being 16⅔ per centum on tableware items and 33⅓ per centum on so-called fancy articles other than tableware, provided such tax forms a part of foreign value as defined by section 402 (c), *supra*.

It appears from the report of the Government's witness, Robert P. Chalker, that under the British Purchase Tax Law "wholesalers and/or manufacturers who sell chargeable goods to be used as stock, or as material in manufacture, whose gross takings from sales of chargeable goods exceed £500 a year on the average" are required to be registered, and that—

Other firms who make, for the purposes of a business of selling by retail, purchases of chargeable goods which in value and character are such as, in the ordinary course of trade, are made by wholesale merchants, must also be registered for purchase tax purposes if the Commissioners so decide. Registration is obtained by persons required or qualified to be registered upon application to the Commissioners of Customs and Excise on Form P. T. 1, a copy of which is attached. Upon approval thereof, the applicant is then furnished with a numbered registration certificate *which enables him to buy chargeable goods tax free from any supplier. The supplier enters the number of the registration certificate on all invoices to such registree and the supplier is then relieved of all responsibility for the payment of the tax to the Commissioners.* The holder of the certificate is then responsible to the Commissioners for the tax on the goods *when he passes them along to an unregistered buyer. The last registered firm to handle the goods in question is therefore held responsible for the amount of the tax.* Severe penalties are imposed for either failure to register if required to do so, or for misuse of the tax certificate in order to obtain goods tax free. [Italics supplied.]

4. *Payment.*—Payment of the amount of tax is made to the Commissioners by *registered firms* quarterly, within one month after the end of each quarter, as can be seen from paragraph 53, notice no. 77 (attached) of the Commissioners. *Liability to the tax arises when the goods pass from the registered firm to the unregistered firm or other unregistered buyer, which means, generally, from wholesaler to retailer.* It has already been noted that retailers are almost never registered, and may only be registered when they come within the purview of paragraph 26 of the Act. [Except for the word "Payment," italics not quoted.]

It further appears from that report that the Commissioners of Customs and Excise are given broad powers of interpretation and administration of the British Purchase Tax Law as provided in sections 30 (1) and (2) and 33 of that act, and that—

the purchase *tax is due at the time when the goods pass into the retail realm.* It matters not that the registered wholesaler may settle up with the Commissioners of Customs and Excise only at intervals of three months. The tax, as is shown on page 1 of Notice No. 77 "becomes chargeable when the goods are sold by the manufacturer or wholesaler to an unregistered person, generally the retailer, or where there is no retail stage, to the public".

It will be seen then, that where sales are made to retailers or direct to large

consumers such as hotels, the manufacturer collects the tax; where sales are made to registered wholesaler dealers, then the latter collects the tax. [Italics ours.]

The report of the American vice consul, so far as material to the issues here, is consistent with the construction placed upon the British Purchase Tax Law by the Commissioners of Customs and Excise, as appears from notices Nos. 74, 77, 78, and 79, and with the other evidence of record.

It appears from the report of the American vice consul and from the notices of the Commissioners of Customs and Excise that the *purchase tax accrues* when the goods are sold and delivered by a *registered manufacturer or wholesaler* to an *unregistered retailer or dealer;* that, when such sales are made, the seller is liable to the Government for the tax, which the law contemplates may be passed on to the unregistered retailer and by him to the consuming public; that in the event the registered manufacturer or wholesaler has branch stores devoted to retail trade, the tax accrues when the goods are transferred to such stores for retail purposes; and that if the registered manufacturer sells to an unregistered dealer or to the consuming public, the tax accrues and the manufacturer is liable therefor, for the reason that, according to notice No. 77, the goods are "appropriated or applied to the purpose of retail trading." It further appears from the report of the American vice consul and from the notices of the Commissioners of Customs and Excise that *the purchase tax is not an element to be considered and does not accrue when the goods are sold by registered manufacturers to registered wholesalers or registered dealers.*

It is stated in notice No. 77 that the date of delivery is when the goods "*are sent* out from the supplier's premises," and that generally the tax applies not only to the wholesale value of the goods but also to carriage charges and other charges incidental thereto. [Italics quoted.]

According to the record, so far as merchandise like or similar to that here involved is concerned, there is an understanding between those engaged in the trade and the Commissioners of Customs and Excise that when the carriage charges, etc. *are not readily ascertainable,* a charge of 2½ per centum may be added to the wholesale value in lieu of the actual so-called "carriage charges."

It is the position of counsel for the Government that the record establishes that in all instances the carriage charges to be added to the wholesale value is 2½ per centum, and that as a discount of 2½ per centum is deducted from the wholesale value, the two items cancel each other, so that the purchase tax is applied only to the wholesale value.

The appellate division of the Customs Court was of opinion that 2½ per centum should be added only in the event the carriage charges

were not readily ascertainable; that the carriage charges which were to be added to the wholesale value might vary; and that, therefore, the tax would not be uniform.

We find it unnecessary to decide that issue because it is evident from what has been said that merchandise like and similar to that here involved is not *freely offered* for sale for home consumption to *all purchasers* in the usual wholesale quantities and in the ordinary course of trade at a price which includes the British purchase tax, within the purview of section 402 (c), *supra,* and that the foreign value, as defined in that section, does not include the tax.

In the case of *United States* v. *Mexican Products Co.,* 28 C. C. P. A. (Customs) 80, 89, C. A. D. 129, the court said:

> In determining foreign and export values, as defined in section 402 (c) and (d), respectively, it is proper to consider only the market values or prices at which merchandise like or similar to that imported is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. (Italics quoted.) See *United States* v. *A. W. Faber, Inc.,* 21 C. C. P. A. (Customs) 290, T. D. 46819; *Stone & Downer Co.* v. *United States,* 21 C. C. P. A. (Customs) 479, T. D. 46958; *United States* v. *American Glanzstoff Corp.,* 24 C. C. P. A. (Customs), 35 T. D. 48308.

In the latter case, referring to the definition of "foreign value" in section 402 (c), supra, we said:

> The expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, but it does mean all of those who cared to buy such goods in such markets.

The foregoing excerpt was quoted with approval, and other cases were cited in support of the principle therein stated, in the case of *American Shipping Co.* v. *United States,* 29 C. C. P. A. (Customs) 250, 255, C. A. D. 198.

It is clearly established by the evidence of record that the British purchase tax is not applicable in any instance when merchandise like or similar to that here involved is exported to the United States.

It is evident, we think, from what has been said that there is substantial evidence of record to establish that merchandise like and similar to that here involved is not freely offered for sale for home consumption to *all purchasers* in the usual wholesale quantities and in the ordinary course of trade in the country from which exported *at a price which includes the British purchase tax,* and that it is only when such goods enter the "retail realm" or are sold by *registered* manufacturers, wholesalers, or dealers to *unregistered* retailers or dealers or to the consuming public, or are transferred to the retail branch stores of registered manufacturers or wholesalers for retail purposes that they are subject to the British purchase tax.

The conclusion we have reached is in accord with the views expressed by the trial judge sitting in reappraisement and the majority of the appellate division of the Customs Court.

Owing to the views we hold, we deem it unnecessary to state here many of the issues presented in the briefs of counsel for the parties and decided by the appellate division of the Customs Court.

It is the contention of counsel for the Government that the facts here involved are consistent with the facts in the case of *United States* v. *Passavant*, 169 U. S. 16, where it was held that a Government tax was a part of the actual market value or wholesale price of cotton velvets in the principal markets of Germany.

The difference between the facts in the *Passavant* case and those in the case at bar is that in that case the tax accrued when the manufacturer sold, that is, when the merchandise was introduced into the open market, and was always a part of the actual market value and was included in the price at which the merchandise was sold to all purchasers for home consumption, whereas, in the instant case, the tax does not accrue when the merchandise is sold by registered manufacturers to registered wholesalers or by registered wholesalers or dealers to other registered wholesalers or dealers, but accrues only when the merchandise is sold to unregistered dealers or to the consuming public.

Among the cases relied upon by counsel for the Government which follow the principle of the decision in the *Passavant* case, *supra*, and in which the tax accrued when the goods were introduced into the open market in the usual wholesale quantities and in the ordinary course of trade are: *Roger & Gallet* v. *United States*, 12 Ct. Cust. Appls. 201, T. D. 40181; *Hugo Reisinger (Inc.) et al.* v. *United States*, 20 C. C. P. A. (Customs) 67, T. D. 45683; *Veolay, Inc., J. E. Bernard & Co., Inc.* v. *United States*, 23 C. C. P. A. (Customs) 101, T. D. 47766; *Roger & Gallet and Guerlain Perfumery Corp.* v. *United States*, 24 C. C. P. A. (Customs) 46, T. D. 48331. The decisions in those cases are of considerable length and we deem it unnecessary to extend this opinion by a detailed discussion of them. It is sufficient to say that as appears therefrom, it is immaterial that the tax is added as a separate item on the invoice, as in the instant case.

We have given careful consideration to the arguments presented here by counsel for the Government but are of opinion that as merchandise like and similar to that here involved is not freely offered for sale *to all purchasers for home consumption in the usual wholesale quantities and in the ordinary course of trade at a price which includes the British purchase tax*, the tax is not a proper part of foreign value and, therefore, is not a part of dutiable value.

For the reasons stated, the judgment is *affirmed*.