.(Reap. Dec. 8590)

BERT FRIEDBERG & COMPANY *v.* UNITED STATES

Entry No. 6202.

(Decided June 15, 1956)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Daniel I. Auster, William J. Vitale, Joseph E. Weil,* and *Henry J. O'Neill,* trial attorneys), for the defendant.

EKWALL, Judge: This reappraisement appeal is before me after having been restored to the docket by Judge Mollison. The facts and law in relation thereto have been ably and comprehensively covered by his memorandum to accompany the order restoring the case to the docket (32 Cust. Ct. 627, Reap. Dec. 8308). I set forth said memorandum as follows:

This is an appeal for reappraisement of the value of certain prism binoculars exported from France in October 1937 and imported into the port of San Francisco in November 1937. The merchandise was entered under a certificate of pending reappraisement (sec. 503 (b) of the Tariff Act of 1930) at the invoice prices,.plus 8 per centum French sole or unique tax, plus cases and packing. It was appraised at the same values, and it is contended by the plaintiff that the said French sole or unique tax does not form any part of the value of the merchandise for tariff purposes.

The appraisement herein was made upon the basis of foreign value, the definition of which, in section 402 (c) of the Tariff Act of 1930, at the time of importation of the merchandise herein, read as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It should be noted that at the time of importation of the merchandise here involved the decision in *United States* v. *Livingston & Southard, Inc.,* 23 C. C. P. A. (Customs) 214, T. D. 48060, decided December 2, 1935, holding that foreign value, as defined above, embraced not only offers for sale for home consumption but also offers for sale for exportation to countries other than the United States, controlled the interpretation of said section 402 (c). The effect of this decision was later nullified by the enactment of the Customs Administrative Act of 1938 (ch. 679, § 8, 52 Stat. 1081) which amended section 402 (c), *supra,* by inserting the words "for home consumption" after the words "freely offered for sale."

It clearly appears that the appraisement was based upon the tax situation which obtained in France at the time of exportation of the binoculars here involved with respect to offers and sales of such or similar merchandise for home consumption only, and the plaintiff has failed to offer any evidence to establish that binoculars such as or similar to those involved were, at the time in question, freely offered for sale within the terms of the statute for exportation to countries other than the United States. It is, therefore, unnecessary to consider the possible effect, under the pertinent decisions hereinafter discussed, that offers for sale for exportation to countries other than the United States might have had upon the determination of the issue presented.

There is no dispute that, at the time of exportation of the instant merchandise, binoculars such as or similar to those here involved were freely offered for sale at the manufacturer's level to all purchasers for home consumption in France in the usual wholesale quantities and in the ordinary course of trade. There is no dispute, either, that the *per se* price at which such or similar binoculars were so offered equalled the invoiced and entered unit *per se* prices. There is no dispute as to the cost of packing or other dutiable charges, and the sole question is whether or not the French sole or unique tax accrued when such or similar binoculars were sold for home consumption in France at the manufacturer's level.

Before considering the nature and character of the sole or unique tax, it might be well to examine the law with relation to the inclusion or exclusion of taxes in the value of imported merchandise under the foreign value provision of valuation statute, section 402 (c) of the Tariff Act of 1930.

It seems clear that when taxes accrue upon merchandise in the foreign market before or at the time it is sold, in the sense that it cannot be sold without liability for the payment of the tax arising or being attached thereto, the tax is part of the market value or price of the merchandise for tariff purposes. This is the gist of the decisions in *United States* v. *Frederick L. Passavant et al.*, 169 U. S. 16, the parent case on the subject, and, among others, *Hugo Reisinger (Inc.) et al.* v. *United States*, 20 C. C. P. A. (Customs) 67, T. D. 45683, and *Veolay, Inc., J. E. Bernard & Co., Inc.*, v. *United States*, 23 C. C. P. A. (Customs) 101, T. D. 47766.

It is to be noted that it is the fact of *accrual of*, or *liability for*, the tax which determines its tariff valuation status, and not the matter of when or by whom *payment* of the tax is to be made. Thus, it makes no difference that the payment of the tax may be deferred, or that the tax debt may be shifted from one person to another as the goods proceed through the levels of commerce. So long as liability for the tax accrues at the time of the sale which has been adopted as the standard of value, it is part of the value of the merchandise for tariff purposes.

In the case of *United States* v. *Wm. S. Pitcairn Corp.*, 33 C. C. P. A. (Customs) 183, C. A. D. 334, cited by the plaintiff herein as analogous in situation and controlling the determination of this case, the *accrual* of the British purchase tax, as distinguished from the *payment* thereof, could be deferred. Thus, when a registered manufacturer or wholesaler sold to a registered dealer, no tax accrued and no liability to the tax arose, but the tax accrued and liability therefor arose only when a registered firm sold to an unregistered retailer or dealer or to the consuming public, or when goods were transferred to the retail branch stores of registered manufacturers or wholesalers for retail purposes.

The sole question presented in that case was whether the price at the manufacturer's level at which the merchandise was freely offered for sale in the foreign market for home consumption included the British purchase tax, and the court

held that since at that level the price *to all purchasers* did not include the tax, it was not part of the foreign value.

With the foregoing as a background, an examination of the nature and character of the French sole or unique tax, as revealed by the record herein, is in order.

Preliminarily, it should be said that the designation of the tax as "sole" or "unique" was seemingly intended to classify the tax as a "single" tax designed to supplant a prior taxing system which placed a turnover tax upon each sale of materials of manufacture, as well as upon the sale of the manufacture itself, thus creating a tax pyramid.

The basic foreign law involved is the French Fiscal Reform Law of December 31, 1936, as amended by the Decree Law of July 8, 1937. The texts of these laws are before me as plaintiff's collective exhibits 2–C and 2–D, respectively, and the translations thereof are before me as plaintiff's collective exhibits 2–C–1 and 2–D–1, respectively.

Also pertinent are the Enforcement Decree of January 27, 1937, the text of which is before me as plaintiff's collective exhibit 2–E, with translation as plaintiff's collective exhibit 2–E–1, administrative regulations concerning the same, the text of which is before me as plaintiff's collective exhibit 2–B, with translation as plaintiff's collective exhibit 2–B–1, and a Codification Decree of April 30, 1937, the text of which is before me as plaintiff's collective exhibit 2–F, with translation as plaintiff's collective exhibit 2–F–1.

As can be readily conceived, a single tax system, such as the sole or unique tax was designed to be, had to take into account and provide for the many and varied situations which can occur in connection with the application of a tax of broad aspect. Perhaps the best description of the nature of the tax is to be found in the administrative regulations concerning the enforcement of the law establishing the tax, which regulations were promulgated February 13, 1937, by the French Ministry of Finance, the text of which is in evidence as exhibit 2–B, and the translation as exhibit 2–B–1.

The description referred to is found in Chapter II, headed "Taxes on the Circulation of Products," Section II of which is headed "Total Single Tax of Six Per Cent,"[1] and reads as follows:

Sub-Section 1—General Economic Nature of the Tax.

10. The total single tax of 6% is not a tax on the product; it is a tax on the sales made by the last manufacturer, producer or converter of the product, that is to say, by a person who puts it in condition to be delivered to the consumer and to be as is used by the latter.

The person liable for the tax is the last producer, manufacturer or converter, that is to say, the person who gives the raw material or the semi-finished product which he has purchased its final shape as finished product, in which shape it is sold directly or indirectly to the consumer for its use or consumption (Art. 2, Section 1 of the Decree of January 27, 1937).

There does not seem to be any dispute that the binoculars here involved were products in a completely finished state, ready for use by the consumer.

The law provided for the "suspension of the payment" of the tax in certain connections. It is the nature and effect of this "suspension of the payment" which is the crux of the case.

---

[1] The 6 per centum rate established by the Fiscal Reform Law of December 31, 1936, was increased to 8 per centum by the Decree Law of July 8, 1937.

In each case providing for the "suspension of the payment" of the tax, the *purchaser* was required to have the status of a "producer." Three classes of persons (or business entities) were required by law to assume that status; one other class could request that it be considered and treated as a producer. In the case of sales for home consumption to all other classes of purchasers, the tax was applied to the transaction of sale by the manufacturer or last "producer" of the goods.

Two of the connections in which "suspension of the payment" of the tax could be effected do not appear to concern themselves with transactions of sale of products such as or similar to those here in issue.

The first of these were sales by manufacturers of unfinished or semifinished products to persons or companies who manufactured them, or had them manufactured, in order to put them in condition to be delivered for consumption. As the products here involved, binoculars, were presumably completely finished, this method of suspension of the payment of the tax could not apply to transactions concerning them.

The second were sales by manufacturers to persons or companies who had their own (the purchaser's) trade-mark or trade name applied to them, and sold them under such trade-mark or trade name. There is no suggestion that the binoculars here involved were in any such situation.

The two other connections in which "suspension of the payment" of the tax could be effected were the following:

(1) Sales to "businessmen" (persons or companies) who were by law required to assume the status of "producers" by reason of the fact that they sold articles manufactured by themselves of a value of 300,000 French francs or more a year, irrespective of whether or not they sold articles which were not manufactured by themselves, and

(2) Sales to persons or companies having exclusively the character of dealers, i. e., who purchased for resale, and who had requested that they be considered as "producers" and had complied with the formalities of registering required of all who by law or by their own request had the character of "producers."

It appears that all "producers" were required to deposit with the internal revenue office a declaration concerning their business, etc., which, in effect, was a registration. It also appears that all manufacturers and "producers" were required to keep books showing (1) sales made in which the tax was collected by the seller, and (2) sales made to "producers" with suspension of the tax; that, in the case of sales in the latter category, the "producer" purchaser was required to supply his seller with a certificate of his status as "producer," and that in all such cases the invoice was required to show the price agreed upon between the parties, without the addition of the tax, and also a statement in the following form "(Tax collected for the Treasury)."

It may very well be that the texts of the various laws and decrees and regulations suffer in translation, but it is noted that in exhibit 2–E–1, being the translation of the Enforcement Decree of January 27, 1937, Article 6 refers to "suspended payment of the 6% tax," "postponement of the demandability of the tax," and "suspended collection of the 6% tax," all presumably meaning the same thing, and the required invoice notation is translated in that article as "Delivery effected with suspended collection of the 6% tax," rather than "(Tax collected for the Treasury)," as noted above.

"Suspended payment" and "suspended collection" would seem to infer that the tax accrued on the first sale by the manufacturer but that the payment of the tax

could be deferred. "Postponement of the demandability" would seem to imply that the accrual of the tax could be deferred.

As has been stated, if the tax accrued on the sale by a manufacturer to a "producer," but its collection or payment could be deferred, it would seem that the principle of the *Passavant* case, *supra*, would apply, and the tax would be part of the value of the goods for tariff purposes. On the other hand, if the tax did not accrue on the sale by the manufacturer to a "producer," but arose only when a manufacturer or "producer" sold to a nonregistered producer or a consumer, the principle of the *Pitcairn* case, *supra*, would apply, and the tax would not be part of the value of the goods for tariff purposes.

It is to be noted that the applicable rate of tax is 8 per centum, and the question naturally arises, 8 per centum of what? Is it 8 per centum of the amount of the first sale by the manufacturer, collection of which may be suspended in the case of sales to those having the character of producers? Or is it 8 per centum of the amount of the last sale by a manufacturer or "producer" to a consumer or a person not having the character of a "producer"? As goods proceed in commerce from manufacturer to "producer," these amounts ordinarily would be different, a higher price quite likely being charged by "producers" than the price they paid the manufacturer in order that they might make a profit and overhead expenses.

Ordinarily, if it were possible to determine upon which of these amounts the 8 per centum tax applies, the result would indicate with some reasonableness the transaction upon which the tax accrued.

The record is not clear on this point. As has been said, it is quite possible that the texts of the laws, decrees, and regulations suffer in translation, but they do not seem to indicate with any degree of certainty the particular purchase level to which the tax applied.

Plaintiff offered evidence in the form of affidavits of (1) the particular manufacturer in the case of the goods here involved (collective exhibit 1), and (2) the director of the Law Department of the Director General of Taxes, French Ministry of Finance (collective exhibit 2), as to the administration of the sole tax. Neither of these documents resolves the difficulty spoken of above, nor does any of the evidence offered by the defendant.

The writer is of the view that a proper disposition of the matter would require the presentation of evidence by the parties with respect to the basis upon which the 8 per centum tax was calculated and applied. For this purpose only, the submission heretofore made is set aside, and the case restored to the next regular San Francisco calendar of this court.

In conformity with the order restoring the case to the docket for the sole purpose of presenting evidence with respect to the basis upon which the 8 per centum tax was calculated and applied, plaintiff before me submitted evidence in the form of a report by the American Embassy at Paris, France. This report was furnished in response to a request by the Commissioner of Customs who transmitted the order and memorandum, together with two questions formulated on the point by the Assistant Attorney General. The report with enclosure of a note, dated February 26, 1955, from the French Ministry for Foreign Affairs, and copies of certain French fiscal laws (exhibit 1), together with an English certified translation thereof (exhibit 2), was offered and received in evidence before me at San Francisco.

The questions and answers above referred to are as follows:

1) Assuming that Struxiano, the producer of binoculars sold them in wholesale quantities at the French currency equivalent of $5.35 per pair, and assuming that the wholesaler resold these binoculars in France, and not for exportation, to a consumer or an unregistered dealer at the French currency equivalent of $6.35; assuming further that the tax liability is primarily Struxiano's but that the dealers assume and agree to discharge Struxiano's tax obligation, would this 8% tax then in existence as to sales of binoculars, ready for use, operate against and be collected on the unit price of $5.35 or on the sale price of $6.35?

A.1) The binoculars sold by Mr. Struxiano with deferred payment of the 8% at the price of $5.35 to a wholesaler who assumes the quality of producer, would be subject to the tax upon resale to a non-producer collected on the price of $6.35.

2) What would be the answer to the above question if the sale price were $4.35?

A.2) If the resale to a non-producer were made at the price of $4.35, the 8% tax would operate against the price of $4.35.

We take note that question No. 1, formulated by the Assistant Attorney General, contains the following:

\* \* \* assuming further that the tax liability is primarily Struxiano's but that the dealers assume and agree to discharge Struxiano's tax obligation \* \* \*.

There is nothing in the record establishing that "the tax liability is primarily Struxiano's." The record shows that the tax is imposed upon a transaction of sale, and not upon the manufacture of a product or the product itself. The entire question before this court is, upon what transaction is the tax imposed? Nor is there anything in the record showing that "dealers assume and agree to discharge" the tax liability of anyone else. The tax liability is imposed by law, not by assumption and agreement.

In disposing of the matter, however, we will assume that the characterizations of the tax liability contained in the foregoing excerpt from question No. 1 are not established facts in the case and do not affect the answers given to the questions.

From these facts regarding the application of the French law and by the exhibits, it is evident that plaintiff has brought himself within the rule announced in *United States* v. *Pitcairn, supra*, in that it has been established that this tax was assessed upon the amount of the last sale by a manufacturer or "producer" to a person not possessing the character of a "producer." The tax was not based upon the amount of the first sale by the manufacturer when he sold to other "producers" with the tax suspended, but was upon the selling price of such "producer" or of some other "producer" in the chain of distribution when he sold to a consumer or person not having the character of a "producer." Therefore, the contention of Government counsel that the tax liability was primarily imposed on and contin-

ued with the manufacturer-producer, and was properly to be included in arriving at and fixing the foreign value of the merchandise, is not supported by the evidence. That the situations in the instant case are analogous to those in the *Pitcairn* case are shown by the following quotations from that decision:

> * * * *The last registered firm to handle the goods in question is therefore held responsible for the amount of the tax.*
>
> \* \* \* \* \* \* \*
>
> * * * *Liability to the tax arises when the goods pass from the registered firm to the unregistered firm or other unregistered buyer, which means, generally, from wholesaler to retailer.*
>
> \* \* \* \* \* \* \*
>
> * * * It further appears from the report of the American vice consul and from the notices of the Commissioners of Customs and Excise that *the purchase tax is not an element to be considered and does not accrue when the goods are sold by registered manufacturers to registered wholesalers or registered dealers.* [Italics quoted.]

Upon the evidence presented and under authority of the rule announced in the *Pitcairn* case, *supra*, I make the following findings of fact and conclusions of law:

1. That the merchandise herein consists of prism binoculars, in a finished state, ready for use by the consumer.

2. That at the time of exportation when such or similar merchandise was sold and delivered by the manufacturer to a "producer," or by one "producer" to another "producer," the French sole or unique tax was not imposed.

3. That at time of exportation when such or similar merchandise was sold and delivered by the manufacturer to a consumer or to a person not having the character of "producer" for home consumption, the tax was imposed on the manufacturer's price at the rate of tax in effect at the time of delivery.

4. That at the time of exportation when such or similar merchandise was sold and delivered by a "producer" who had purchased the merchandise from the manufacturer or from another "producer," with the tax suspended, and the sale was to a consumer or person not having the character of "producer" for home consumption, the French sole or unique tax was calculated and assessed on this last "producer's" selling price to the consumer or purchaser not having the character of a "producer."

5. That at the time of exportation, merchandise such as or similar to that herein involved was not freely offered for sale for home consumption or for sale to countries other than the United States to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets at a price plus the French sole or unique tax.

I conclude as a matter of law, that the foreign value of the involved merchandise is the invoice price, exclusive of the French sole or unique tax, plus cases and packing.

Judgment will be rendered accordingly.